HENSLEY LESTER

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER *and*

ISLAND CREEK COAL CO., *and* HAWLEY COAL MINING

COMPANY

(No. 13960)

Decided March 7, 1978.

*Robert Edward Blair* for appellant.

*Edward I. Eiland* for appellee Island Creek Coal Co.

*Tutwiler, Crockett & LaCaria, McGinnis E. Hatfield, Jr.* for appellee Hawley Coal Mining Co.

McGRAW, JUSTICE:

This is an appeal from a final order of the Workmen's Compensation Appeal Board which affirmed a decision by the Workmen's Compensation Commissioner denying claimant's application for occupational pneumoconiosis benefits. In denying the application, both the Commissioner and the Appeal Board held that claimant's application for occupational pneumoconiosis benefits was not timely filed as required by the statute in effect at the time claimant was last exposed to the hazards of occupational pneumoconiosis.

Counsel for the respective parties agree that claimant was last exposed to the hazards of occupational pneumoconiosis on March 13, 1970, when he ceased employment with the Island Creek Coal Company. It was also agreed that the claimant first learned from a physician that he

suffered from occupational pneumoconiosis on April 15, 1971, and that claimant filed his application for occupational pneumoconiosis benefits on March 22, 1973.

When claimant was last exposed to the hazards of occupational pneumoconiosis, the Workmen's Compensation Act required claims for occupational pneumoconiosis benefits to be filed within three years from the date of the last exposure to the hazards of occupational pneumoconiosis.[1] Before this three year limitation period had expired, the legislature twice amended the statute eliminating all time limitations on filing with the exception that a claim must be filed within three years from and after the employee's occupational pneumoconiosis was made known to him by a physician or which he should reasonably have known, whichever shall last occur.[2]

---

[1] On March 13, 1970, W.Va. *Code* 23-4-15, provided, in pertinent part:

To entitle any employee to compensation for occupational pneumoconiosis ... the application ... must be ... filed ... within three years from and after the last day of the last continuous period of sixty days or more during which the employee was exposed to the hazards of occupational pneumoconiosis .... 1969 W. Va. Acts ch. 152.

[2] Effective July 1, 1970, the statute stated, in relevant part, as follows:

To entitle any employee to compensation for occupational pneumoconiosis ... the application ... must be ... filed ... within three years from and after the last date of the last continuous period of sixty days or more during which the employee was exposed to the hazards of occupational pneumoconiosis or within one year from and after the employee's occupational pneumoconiosis was made known to him by a physician or which he should reasonably have known, whichever shall last occur. ... 1970 W. Va. Acts. ch. 81.

Effective July 1, 1971, the statute provides:

To entitle any employee to compensation for occupational pneumoconiosis ... the application ... must be ... filed ... within three years from and after the last day of the last continuous period of sixty days or more during which the employee was exposed to the hazards of occupational pneumoconiosis, or within three years from and after the employee's occupational pneumoconiosis was made known to him by a physician or which he should reasonably have known, whichever shall last occur. ... 1971 W. Va. Acts ch. 177.

I

If the amendments are applicable to claimant's accrued but unexpired claim, then his claim was timely filed because it was filed within three years from and after the employee's occupational pneumoconiosis was made known to him by a physician.

The first question we are called upon to determine is whether the amendatory enactments were intended by the legislature to apply not only to claims accruing after their passage but also to claims which accrued prior to their passage but which were not yet barred by the previously existing time limitation.

The employer relies on *Loveless v. State Compensation Commissioner*, 155 W. Va. 264, 184 S.E.2d 127 (1971), which involved an amendment to the time limitations on petitioning for reopening a claim for permanent partial disability. In syllabus points 1 and 2, the Court held:

> 1. The presumption is that a statute is intended to operate prospectively, and not retrospectively, unless it appears, by clear, strong and imperative words or by necessary implication, that the Legislature intended to give the statute retrospective force and effect. Pt. 4, syllabus, Taylor v. State Compensation Commissioner, 140 W.Va. 572 [86 S.E.2d 114].

> 2. Statutes of limitations are not exceptions to the rule that statutes are prima facie to be given only prospective operation. Pt. 6, syllabus, State v. Mines, 38 W.Va. 125 [18 S.E. 470].

In resolving this question, we must look not only to the language of the statutory provisions but also to their purpose. Considering the amendments together, the legislature has expressly abandoned any fixed and rigid time restrictions within which a claim for occupational pneumoconiosis benefits must be filed and has opted instead for a limitation period based on the claimant's discovery of the occupational disease.

The legislature's actions signify an awareness that occupational pneumoconiosis may go undetected for a long

time, for this disease often does not become manifest until years after the victim was last exposed to the causes of the disease.[3] The amendments also manifest legislative recognition of the fact that a fixed and rigid time restriction on the filing of a claim would occasionally result in a harsh and unjust result. It would serve as a trap for the unwary worker whose claim would be barred for an injury which was unknown to him at the time filing was required. A set time limitation could conceivably lapse before the symptoms of this insidious disease became evident or before the disease results in disability. It was just this kind of result the legislature expressly sought to prevent.

Keeping in mind the beneficient purposes of the Workmen's Compensation Act and the liberality rules as to its construction, and being aware of the mischief sought to be remedied by the legislative amendments, we perceive no reason why the legislature would not have intended such amendments to be applicable to claims which were alive and well and not barred by the previously existing time limitations. The necessary implication arising from the history and purpose of the liberalizing amendments is a legislative intent to ensure that workers who have contracted occupational pneumoconiosis shall have a reasonable opportunity, after learning of its presence, to present a claim for benefits. Fairness, justice, and common sense indicate the legislature desired as many injured workers as possible to have the benefit of its liberalizing enactments not just those who were last exposed to the hazards of occupational pneumoconiosis subsequent to the effective date of each amendment.

It has long been recognized in this jurisdiction that where a new statute deals with procedure only, prima facie, it applies to all actions—those which have accrued or are pending, and future actions. *Consentina v. State*

---

[3] *See generally, Panzino v. Continental Can Co.*, 71 N.J. 298, 364 A.2d 1043 (1976); *Textileather Corp. v. Great American Indem. Co.* *108 N.J. L. 121, 156 A. 840 (1931).*

*Compensation Commissioner*, 127 W.Va. 67, 31 S.E.2d 499 (1944); *Proffitt v. State Compensation Commissioner*, 108 W.Va. 438, 151 S.E. 307 (1930); *Tackett v. Ott*, 108 W.Va. 402, 151 S.E. 310 (1930); *McShan v. Heaberlin*, 105 W.Va. 447, 143 S.E. 109 (1928).

A substantial majority of those jurisdictions which have considered the precise question presented here hold that statutes enlarging the limitation period are merely procedural and remedial in nature and are applicable to claims not barred under the original limitation period at the effective date of the statute enlarging the limitation period. *Davis v. Industrial Accident Commission*, 198 Cal. 631, 246 P. 1046 (1926); *Garris v. Weller Construction Co.*, 132 So.2d 553 (Fla. 1960); *Wilson v. Santa Fe Trail Transportation Co.*, 185 Kan. 725, 347 P.2d 235 (1959); *Kiser v. Bartley Mining Co.*, 397 S.W.2d 56 (Ky. 1965); *Baltimore v. Perticone*, 171 Md. 268, 188 A. 797 (1937); *Donovan v. Duluth Street Railway*, 150 Minn. 364, 185 N.W. 388 (1921); *McCann v. Walsh Construction Co.* 306 N.Y. 904, 119 N.E.2d 596 (1954); *Seneca v. Yale & Towne Manufacturing Co.*, 142 Pa. Super. 470, 16 A.2d 754 (1940); *Britto v. Fram Corp.*, 93 R.I. 426, 176 A.2d 81 (1961); *Lane v. Department of Labor and Industries*, 21 Wash.2d 420, 151 P.2d 440 (1944); Annot., 79 A.L.R.2d 1080 (1961). We believe the majority view is sound and we adopt it.

Some decisions of this Court defining the nature and character of the limitation periods governing the filing of claims are theoretically inconsistent, overly rigid, and needlessly technical; they sometimes defeat, rather than advance, the beneficial purposes of the statute.

Although ordinary statutes of limitations are considered remedial or such as only to control the exercise of a substantive right, the time limitations in our act have been held to enter into and become a part of right of action itself and are a limitation not only on the remedy but on the right as well. In syllabus point 1 of *Sudraski v. State Compensation Commissioner*, 116 W.Va. 441, 181 S.E. 545 (1935) the Court held:

> A limitation qualifying a special statutory right is generally held to be unaffected by the disabilities and excuses which allay ordinary statutes of limitation, and to be such an inherent part of the statute which creates the right, that the right itself does not survive the limitation.

The literal application of this rule would preclude fraud, or the equitable principles of waiver and estoppel from tolling the limitation periods under the Act. *See, e.g., Young v. State Compensation Commissioner,* 121 W. Va. 126, 3 S.E.2d 517 (1939). Yet in *France v. Workmen's Compensation Appeal Board,* 117 W. Va. 612, 186 S.E. 601 (1936), the Court held the Commissioner was estopped from denying a claim as being untimely filed, where a claimant timely explains his claim to the Commissioner, and the Commissioner's subsequent conduct would clearly warrant the claimant in assuming that his claim had been properly filed.

A majority of jurisdictions now hold an employer may waive compliance with the time requirements for filing or may be estopped from relying on the limitation provisions. *See, e.g., M. Gordon & Sons, Inc. v. Workmen's Compensation Appeal Board,* 14 Pa. Commw. Ct. 288, 321 A.2d 396 (1974); 3 A. Larson's, *Workmen's Compensation Law,* §§ 78.45 & 78.70 (1976).

The rule of *Sudraski* is unnecessarily rigid and contrary to the humanitarian purposes of workmen's compensation legislation and is expressly disapproved. The time limitations regulating the filing of applications for workmen's compensation benefits under W.Va. Code § 23-4-15 are basically procedural and remedial in nature. Their purpose is not unlike limitation statutes found elsewhere in the law; they serve the salutary function of protecting employers from claims too old to be properly investigated and defended. Obviously the interest in an orderly and efficient system of compensation is also furthered. The legislature, based on the experience with the original statutory scheme and in the interest of fundamental fairness, redefined the procedures an injured workman must follow to exercise his preexisting right to

occupational pneumoconiosis benefits. Consequently, we are of the opinion that the amendments are applicable to claims which had accrued and had not yet expired under the previously existing period of limitation.

The application of the amendments to the case at bar necessarily results in a finding that claimant's application for occupational pneumoconiosis benefits was timely filed, unless such application is constitutionally impermissible. Two constitutional issues are squarely presented by prior decisions of this Court.

## II

We initially consider whether an amendment to the workmen's compensation act which increases the time limitation for filing a claim for occupational pneumoconiosis benefits unconstitutionally impairs the obligation of the contract.[4]

The employer relies heavily on *Loveless, supra*, where the Court held in syllabus points 3 and 4:

3. The workmen's compensation statutes including amendments thereof, become an integral part of and must be read into the contract of employment existing between the employer and the employee. Pt. 2, syllabus, Maxwell v. State Compensation Director, 150 W.Va. 123, .[144 S.E.2d 493].

4. Workmen's compensation statutes are considered to be a contractual relationship between the employer and the employee and cannot have retroactive effect to change or impair the obligation of a contract.

An analysis of the contract question requires a brief examination of the history and nature of workmen's compensation laws in the United States in order to determine the origin of the doctrine that the rights and duties of employers and employees derive from the contract of employment.

---

[4] U.S. Const. art. I, § 10, cl. 1 & W.Va. Const. art. 3, § 4.

When workmen's compensation acts were first enacted in the twentieth century they were subjected to continual constitutional attack. The first New York act providing compulsory coverage and direct employer liability for certain 'hazardous employments' was held unconstitutional in *Ives v. South Buffalo Ry.*, 201 N.Y. 271, 94 N.E. 431 (1911), primarily on the ground that the provisions requiring payment to an employee for injuries sustained in the course and as a result of employment without regard to the employer's negligence or fault deprived employers of substantive due process. While the *Ives* court placed considerable emphasis on the liability without fault feature of New York's law, there is no doubt that the court was influenced by the then prevailing economic and political theories of economic individualism and lassiz faire capitalism. These interrelated doctrines, of course, required that the state not interfere with the free enterprise system and the rights of employers and employees to contract freely with the regard to wages, hours, and any other terms and conditions of employment.

It must be remembered that just six years earlier the United States Supreme Court held invalid a New York statute, which limited employment in bakeries to a maximum of sixty hours per week and ten hours per day, as a deprivation of the substantive due process right of liberty to contract. *Lochner v. New York* 198 U.S. 45, 25 S. Ct. 539, 49 L. Ed. 937 (1905).

Many States considering the enactment of some form of workmen's compensation law sought to avoid such constitutional objections by wording their acts so as to make their application dependent upon the mutual consent of employers and employees.[5] West Virginia fol-

---

[5] Professor Larson makes this comment as to the practical results flowing from preliminary constitutional setbacks:

The very fear of unconstitutionality impelled the legislatures to pass over the ideal type of coverage, which would have been both comprehensive and compulsory, in favor of more awkward and fragmentary plans whose very weakness and incomplete-

lowed this pattern when its Workmen's Compensation Act was enacted in 1913.[6] Almost immediately after its passage our act was subject to substantive due process challenges.[7] In *Rhodes v. J.B.B. Coal Co.*, 79 W.Va. 71, 90 S.E. 796 (1916), an employee unsuccessfully contended the act deprived him of the constitutional guarantee of due process of law, equal protection, and the right to a jury trial. The Court analyzed decisions from other jurisdictions and found that early decisions made constitutional questions turn on whether the act was compulsory in nature as contrasted with optional or elective, while later cases upheld even compulsory statutes on the theory that such statutes were a valid exercise of the police power of the state. The Court said this as to our Act:

> [W]e think it suffices to say that in no instance does any of the later decisions invalidate statutes like ours, containing the insurance feature and imposing the burden of providing the fund alike upon employer and employee. Our statute is not strictly a compulsory one, the employer may or may not qualify under it. The penalty for not doing so is to deprive him of the defenses enumerated. It is compulsory upon the employee to the extent only that if he remains in the service of his employer after notice that the latter has elected to come under the statute, and has complied with the requirements thereof, he shall be deemed to have waived his common law

---

ness might ensure their constitutional validity. And so, beginning with New Jersey, 'elective' or 'optional' statutes became common, under which employers could choose whether or not they would be bound by the compensation plan, with the alternative of being subject to common-law defenses. 1 A. Larson, *Workmen's Compensation Law* § 5.20 (1973).

[6] 1913 W.Va. Acts, ch. 10.

[7] *DeFrancesco v. Piney Mining Co.*, 76 W.Va. 756, 86 S.E. 777 (1915), and *Watts v. Ohio Valley Elec. Ry.*, 78 W.Va. 144, 88 S.E. 659 (1916) upheld without discussion provisions which deny covered employers the right to assert common law defenses where they do not subscribe to the fund or otherwise fail to comply with the act.

right of action for injuries sustained. Prior to the enactment of any of these Workmen's Compensation statutes we judicially know that many industrial corporations found it necessary for their protection to insure against liability for personal injuries to employees. Legislative acts like ours though compulsory are but other forms of industrial insurance. We are asked in this case to follow the earlier decisions, which denied the validity of the statutes, but we must decline to do so in the face of the more recent and well considered cases, and which we think are more in consonance with reason and enlightened public policy. *Id.* at 81, 90 S.E. at 799-800.

Following the *Ives* decision, New York amended its constitution so as to authorize a compulsory workmen's compensation law and passed such a law in 1913. In *New York Central R. R. v. White*, 243 U.S. 188, 37 S. Ct. 247, 61 L. Ed. 667 (1917), the Supreme Court unanimously upheld the constitutionality of the New York law against a challenge by an employer that the statute impermissibly deprived employers and employees of their liberty to acquire property by preventing them from making whatever agreement they chose respecting the terms of employment. On this point, Mr. Justice Pitney, writing for the Court, observed:

[W]e recognize that the legislation under review does measurably limit the freedom of employer and employee to agree respecting the terms of employment, and that it cannot be supported except on the ground that it is a reasonable exercise of the police power of the state. In our opinion it is fairly supportable upon that ground. And for this reason: The subject matter in respect of which freedom of contract is restricted is the matter of compensation for human life or limb lost or disability incurred in the course of hazardous employment, and the public has a direct interest in this as affecting the common welfare. *Id.* at 206, 37 S. Ct. at 254, 61 L. Ed. at 676.

In this case, and others[8] decided the same term, the highest court in the land thus discarded the notion that workmen's compensation legislation must be based ostensibly on contract, and made clear that such legislation can be based on the state's broad police power.

It is on this background as to the constitutional and legislative history of workmen's compensation legislation generally that we must examine the origin of the concept that the rights and obligations of employers and employees under this state's industrial insurance system are contractual in nature.

In *Gooding v. Ott*, 77 W.Va. 487, 87 S.E. 862 (1916), the Court first addressed the question of whether the coverage of the act extended to accidents occurring extraterritorially. In holding the act applicable, the Court focused on the "elective" nature of our Act:

> A distinction has been noted in some of the authorities between cases arising under compulsory statutes and those controlled by statute, as in New Jersey, and we think in this state, which are optional. Where the statute compels submission by the employer and employee, there is no contract, as a general rule, enforceable outside of the state. But where, as in New Jersey and in this state, the statute makes acceptance optional, and the parties freely enter into the contract of employment with reference to the statute, the statute should be read into the contract as an integral part thereof, binding the parties, and enforceable in any jurisdiction the same as any other contract. *Id.* at 492, 87 S.E. at 864.

Our Court in *Gooding*, like some other early courts faced with questions as to the territorial limits of their state law, adopted the "contract theory" under which the place of making the employment contract became

---

[8] *Hawkins v. Bleakly*, 243 U.S. 210, 37 S. Ct. 255, 61 L. Ed. 678 (1917); *Mountain Timber Co. v. Washington*, 243 U.S. 219, 37 S. Ct. 260, 61 L. Ed. 685 (1917).

controlling.[9] By considering the right to compensation benefits as being contractual, and by drawing on the readily available conflicts principle of *lex loci contractus*, our Court extended the benefits and protection of the Act to certain out-of-state accidents. Our Court followed *Gooding* in *Foughty v. Ott*, 80 W.Va. 88, 92 S.E. 143 (1917), and has applied the "contrary theory" in many subsequent decisions involving claims by dependents without any analysis of the soundness and validity of the theory. We think an examination of that theory is now in order.

To view the right to workmen's compensation benefits as being consensual and contractual is, in our view, a gross fiction stemming in part from constitutional difficulties with compulsory industrial insurance, and in part from decisions of this Court in regard to the territorial reach of our Act.

The application of contract principles to workmen's compensation has prompted persuasive critical commentary in the conflicts of law field.[10] Several early commentators[11] observed that the "election" to come under workmen's compensation law was more fiction than fact in light of the coercion actually exercised on both employers and employees.[12] We completely agree. In our

---

[9] 4 A. Larson, *Workmen's Compensation Law* § 87.31 (1977); a second or alternative ground for the Court's holding was statutory construction; that is, the language of the Act indicated an intent that its provisions apply except where the workmen was employed wholly without the state.

[10] Dunlap, *The Conflict of Laws and Workmen's Compensation*, 23 Calif. L. Rev. 381 (1935); Dwan, *Workmen's Compensation and the Conflict of Laws*, 11 Minn. L. Rev. 329 (1927); Wellen, *Workmen's Compensation, Conflict of Laws, and the Constitution*, 55 W.Va. L. Rev. 131 (1952-53).

[11] The elective form of legislation has been sharply criticized as "pseudo-elective," "conceded to be a piece of legislative trickery," "a plan elective on the face of it, but not elective in fact" and ". . . optional in name but coercive in substance." Smith, *Sequel to Workmen's Compensation Acts*, 27 Harv. L. Rev. 235, 249 n. 42 (1913-14).

[12] The employer in *Hawkins v. Bleakly, supra*, n. 7, argued that Iowa's 'elective' act subjected employers to duress in order to compel acceptance of the act.

view, even aside from considerations of the inequality of bargaining power between employers and employees, the fictional character of the election under the so-called "elective" statutes belies any truly consensual or contractual relationship.

In addition, there are theoretical difficulties inherent in the contract theory which become evident upon cursory analysis. In *Hopkins v. Matchless Metal Polish Co.*, 99 Conn. 457, 121 A. 828 (1923), the employer and insurer contended that the contract theory prevented amendments to the workmen's compensation act, enacted subsequent to the initial hiring date, from becoming a part of the contract of employment. The court disagreed and stated:

> We think this is a misconception of the effect of the election by an employer or employee; his election, as a matter of law, incorporates the provisions of the Act and any subsequent amendments thereto as a part of the contract. No violation of a right of contract can arise out of this, since it is by his own election that the Act and subsequent amendments are incorporated in his contract. *Id.* at 460, 121 A. at 828-29.

While this rationale seems eminently logical, this Court in *Loveless, supra,* and the cases cited therein, held that amendments to our workmen's compensation statute cannot be applied retrospectively to impair the obligations of contract or to affect the substantive rights of the parties. The contract theory thus produces inconsistent results and is unsound.

This Court in *Prager v. W. H. Chapman & Sons Co.*, 122 W.Va. 428, 433 9 S.E.2d 880, 883 (1940), quoted the words of Mr. Justice Sutherland as to the true nature of workmen's compensation legislation:

> [W]orkmen's compensation legislation rests upon the idea of status, not that of implied contract; that is, upon the conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to

whose operations he contributes his work as the owner contributes his capital [-the one for the sake of the wages and the other for the sake of profits. The liability is based, not on any act or omission of the employer, but on the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured.] quoting *Cudahy Packing Co. v. Parramore,* 263 U.S. 418, 423, 44 S. Ct. 153, 68 L. Ed. 366, 369 (1923).

Therefore, despite our course of decisions in this area of the law,[13] we are of the opinion that the rights and duties under our workmen's compensation statute are no longer contractual but grow out of the employer-employee status to which the law attaches certain duties and responsibilities. The liability of employers arises from the law itself, rather than from any agreement of the parties. The only significance adhering to the contractual relationship is the existence of an employer-employee relationship. Once the employer-employee relationship is established, the statute imposes certain duties and responsibilities on the parties to that relationship.

Other courts hold that the rights and duties under compensation acts arise from the employer-employee relationship or status. *Argonaut Mining co. v. Industrial Accident Commission,* 104 Cal. App.2d 27, 230 P.2d 637 (1951); *Price v. All American Engineering Co.,* 320 A.2d 336 (Del. Supr. 1974); *Glencoe v. Industrial Commission,* 354 Ill. 190, 188 N.E. 329 (1933); *Brownfield v. Southern Amusement Co.,* 196 La. 73, 198 So. 656 (1940); *Crilly v. Ballou,* 353 Mich. 303, 91 N.W.2d 493 (1958); *Todeva v. Oliver Iron Mining Co.,* 232 Minn. 422, 45 N.W.2d 782

---

[13] To the extent that *Loveless v. State Workmen's Compensation Commissioner,* 155 W.Va. 264, 184 S.E.2d 127 (1971); *Maxwell v. State Compensation Director,* 150 W.Va. 123, 144 S.E.2d 493 (1965); *Lester v. State Compensation Commissioner,* 123 W.Va. 516, 16 S.E.2d 920 (1941); *Hardin v. Workmen's Compensation Appeal Board,* 118 W.Va. 198, 189 S.E. 670 (1937); *Gooding v. Ott,* 77 W.Va. 487, 87 S.E. 862 (1916) and numerous other cases are inconsistent with this decision, they are expressly overruled.

(1951); *State ex rel. Morgan v. Industrial Accident Board,*
300 P.2d 954 (Mont. 1956); *McAllister v. Board of Education,* 79 N.J. Super. 249, 191 A.2d 212 (1963); *Schmidt v.
Wolf Contracting Co.,* 269 App. Div. 201, 55 N.Y.S.2d 162
(1945), *aff'd per curiam,* 295 N.Y. 748, 65 N.E.2d 568
(1946); *Hall v. Industrial Commission of Ohio,* 131 Ohio
St. 416, 3 N.E.2d 367 (1936); *Fay v. Industrial Commission,* 100 Utah 542, 114 P.2d 508 (1941); *Grenier v. Alta
Crest Farms,* 115 Vt. 324, 58 A.2d 884 (1948); *Mattson v.
Department of Labor and Industries,* 176 Wash. 345, 29
P.2d 675 (1934); 99 C.J.S. *Workmen's Compensation* §§ 12
& 14 (1958).

Accordingly, as the rights and duties imposed under
our workmen's compensation act are not based on an
express or implied contract,[14] the Contract Clause is not
a constitutional impediment to the legislation under review here.

## III

We next consider whether an employer has a vested
right in the limitation period in effect at the date of the
injury. Based on the contractual theory of workmen's
compensation, many decisions of this Court hold that
the statute in effect at the date of the injury controls
the disposition of the claim. *Ball v. Workmen's Compensation Commissioner,* 156 W. Va. 419, 194 S.E.2d 229
(1973); *Lancaster v. State Compensation Commissioner,*
125 W. Va. 190, 23 S.E.2d 601 (1942).

---

[14] W.Va. Code § 23-2-1 (Cum. Supp. 1977), effective June 4, 1974,
makes this state's Workmen's Compensation Act expressly compulsory subject to certain exceptions:

The State of West Virginia and all governmental agencies or
departments created by it ... and all persons, firms, associations and corporations regularly employing another person or
persons for the purpose of carrying on any form of industry,
service or business in this state, are employers within the
meaning of this chapter and are hereby required to subscribe
and pay premiums into the workmen's compensation fund. ...
*See also* W.Va. Code § 23-1-16 (Cum. Supp. 1977) and W.Va. Code §
23-2-7 (Cum. Supp. 1977).

The legislature, however, has extended the time for filing accrued occupational pneumoconiosis claims beyond that permitted at the date of claimant's last exposure to the hazards of occupational pneumoconiosis. Therefore, the question remains: Do the amendments unconstitutionally impair the vested rights or property rights of the employer? This Court, in an analogous situation, sustained an amendment to the workmen's compensation law which imposed time limitation on claims for additional compensation where no such limitation was in effect on the date of the injury. *Greer v. Workmen's Compensation Commissioner*, 123 W. Va. 270, 15 S.E.2d 175 (1941). The Court stated:

> It is universally held that the legislature may establish, or lengthen, or shorten, the time within which any sort of judicial, or quasi judicial, proceeding may be instituted for the enforcement of legal rights, provided a reasonable time be allowed for the instituting of proceedings on rights then existing. *Id.* at 275, 15 S.E.2d at 177.

It cannot be gainsaid that the legislature has the power to modify this state's industrial insurance program as it sees fit so long as no constitutional provision is infringed. The legislature has made its judgment; its enactments are entitled to a presumption of constitutionality.

It is clear that a person has no vested right in the running of a statute of limitations unless it has completely run and barred the action. *Davis v. Industrial Accident Commissioner*, 198 Cal. 631, 246 P. 1046 (1926); Annot., 79 A.L.R.2d 1080 (1961); *Roderick v. Hough*, 146 W.Va. 741, 124 S.E.2d 703 (1961) (Calhoun, J., dissenting), and the authorities cited therein.

The legislature has not here attempted to revive a claim which had expired under the time period in effect on the date of the injury.[15]

---

[15] We don't reach the issue of reviving an expired claim here, but *compare Campbell v. Holt*, 115 U.S. 620, 6 S. Ct. 209, 29 L. Ed. 483 (1885), holding a state legislature consistent with the Fourteenth

The amendments enlarging the time period within which claims for occupational pneumoconiosis can be filed is not retroactive legislation impairing vested rights. This Court recently defined retroactive legislation from a constitutional viewpoint in syllabus point 3 of Sizemore v. *State Workmen's Compensation Commissioner*, ____ W. Va. ____, 219 S.E.2d 912 (1975) as follows:

> The law is not retroactive merely because part of the factual situation to which it is applied occurred prior to its enactment; only when it operates upon transactions which have been completed or upon rights which have been acquired or upon obligations which have existed prior to its passage can it be considered to be retroactive in application.

*See also, Roderick v. Hough*, 146 W.Va. 741, 124 S.E.2d 703(1961) (Calhoun, J., dissenting).

Accordingly, since the employer acquired no vested rights, we conclude no constitutional violation resulted from the enactment of the amendments. The legislature recognized the injustice of a fixed time period in cases involving an insidious disease which has effects that can be latent or long-delayed. The legislature has relieved innocent victims and their families of the injustice of being denied compensation for injuries received in the course of and as a result of employment; the legislature has done no more than comply with the simple demands of justice.

For the reasons stated in this opinion, the Appeal Board was clearly wrong in applying the statute in effect when claimant was last exposed to the hazards of

---

Amendment may repeal or extend a statute of limitations even after the right of action is barred under such statute, except where a party has been vested through lapse of time with title to real or personal property, *with William Danzer & Co. v. Gulf & Ship Island R.*, 268 U.S. 633, 45 S. Ct. 612, 69 L. Ed. 1126 (1925) and *Davis v. Mills*, 194 U.S. 451, 24 S. Ct. 692, 48 L. Ed 1067 (1904), holding a state legislature may not extend a period of limitation after it has expired where the limitation period is considered a part of the substantive right.

occupational pneumoconiosis, and the case is remanded to the Commissioner with directions to hold the claim was timely filed.

*Reversed and remanded with directions.*