ALBERT L. PNAKOVICH

*v.*

SWCC *and* ISLAND CREEK COAL CO.

(No. 14522)

HOWARD BRADLEY

*v.*

SWCC *and* WESTMORELAND COAL CO.

(No. 14537)

ALLEN G. PHILLIPS

*v.*

SWCC *and* CARBON FUEL CO.

(No. 14538)

CHARLES W. BRAGG

*v.*

SWCC *and* CONSOLIDATION COAL CO., *et al.*, CONSOLIDATION

COAL CO.

(No. 14535)

DONALD EUGENE GILLENWATER

*v.*

SWCC *and* CONSOLIDATION COAL CO.

(No. 14589)

Decided October 16, 1979.

*George G. Burnette, Jr.,* for Pnakovich.

*Timothy R. Ruckman, Callaghan & Callaghan,* for Island Creek Coal.

*Rodney A. Skeens* for Bradley.

*Edward G. Atkins* for Phillips.

*George G. Burnette, Jr.,* for Bragg.

*Furbee,. Amos, Webb & Critchfield, Billy Atkins* for Consolidation Coal.

*John P. Anderson* for Gillenwater.

*Jackson, Kelly, Holt & O'Farrell, John L. McClaughery and J. Randolph Query* for Westmoreland, Carbon Fuel and Consolidation Coal.

NEELY, JUSTICE:

These five cases present substantially the same question and for the purpose of appeal are consolidated for decision. The question presented is whether a claimant qualifies for a twenty week award for occupational pneumoconiosis without measurable pulmonary impairment under *W. Va. Code*, 23-4-6a [1978] when the date of injury (date of last exposure) predated the effective date of the amended statute. In the three cases where the Commissioner's final order denying benefits was entered before the effective date of the statute, the Workmen's Compensation Appeal Board did not apply the amendment on the theory that the claim was fully adjudicated before the effective date of the amendment. Conversely, the Appeal Board found that the two appellees who were

denied their awards after the effective date were eligible for awards. We find that in all claims where the final order of the Commissioner or the Appeal Board, if an appeal was taken, was entered after the effective date of the amendment, recovery may be had under the new statute. Thus we affirm the two cases regarding the appellee-claimants and reverse the three cases of the appellant-claimants.

All five of the claimants in these cases were found by the Commissioner's final orders to suffer from occupational pneumoconiosis with no ascertainable impairment. The dates of the Commissioner's final orders were as follows: Allen Phillips, 12 December 1977; Albert Pnakovich, 12 May 1978; Howard Bailey, 13 June 1978; Donald Gillenwater, 14 August 1978; and, Charles Bragg, 31 August 1978. Interestingly, there was no correlation between the date of filing and the date of decision by the Commissioner. While Allen Phillips was denied an award seven years after he applied, Charles Bragg was granted an award by the Appeal Board five years after he had applied.

I

The narrow legal question these cases present is whether the amendment, *W. Va. Code*, 23-4-6a [1978],[1] which schedules benefits payable for a diagnosis of occupational pneumoconiosis without measurable impairment, is a procedural change which should be applied retroactively or a substantive change which can be applied only prospectively. At the outset, it is important to remember that calling a statutory change "procedural" or "substantive" does not improve our understanding of

---

[1]This amendment provides in pertinent part:

[T]hat if it shall be determined by the commissioner in accordance with the facts in the case and with the advice and recommendation of the occupationl pneumoconiosis board that an employee has occupational pneumoconiosis, but without measurable pulmonary impairment therefrom, such employee shall be awarded and paid twenty weeks of benefits at the same benefit rate as hereinabove provided.

whether a statute should or should not be applied retroactively. The whole business of designating things as "substantive" or "procedural" must be approached cautiously because there is no clear or consistent line of cases which provides guidance for distinguishing a matter of substance from a matter of procedure. It appears from the cases we have read that once a court decides the issue of retroactivity it justifies its result by calling the change "substantive" or "procedural."[2]

Our Court has recently expanded its case law definitions of "procedural change" to avoid manifestly unjust results which would have followed from the requirement that substantive statutes be applied prospectively in all but a few limited circumstances. As recently as 1971 we held that amendments to the Workmen's Compensation Act could be given only prospective effect, *Loveless v. State Workmen's Compenstion Comm'r*, 155 W. Va. Code 264, 184 S.E.2d 127 (1971); however, we have now retreated from this rule to such an extent that the validity of the rule itself is called into considerable question. In a series of recent Workmen's Compensation cases this Court has performed the traditional judicial function of sacrificing legal rules upon the altar of equity. Thus in *Eggleton v. State Workmen's Compensation Comm'r*, ___W. Va.___, 214 S.E.2d 864 (1975), we held that amendments enacted in 1970 and 1971, which expanded the time in which a claim could be reopened, applied to an employee who had been injured before the amendment's effective date. Similarly, in *Lester v. State Workmen's Compensation Comm'r*, ___W. Va.___, 242 S.E.2d 443 (1978), we held that an amendment which expanded the statute of limitations for filing an occupational

---

[2]Oliver Wendell Holmes, then Chief Justice of the Supreme Judicial Court of Massachusetts, encountered the same problem nearly eighty years ago when he attempted to find consistent constitutional rules among the cases relating to retroactive legislation. He could only conclude that, "[p]erhaps the reasoning of the cases has not always been as sound as the instinct which directed the decisions." *Danforth v. Groton Water Co.*, 178 Mass. 472, 476, 59 N.E. 1033, 1034 (1901).

pneumoconiosis claim applied to a claimant whose last exposure was before the amendment's effective date. In both of these cases and *per curiam* opinions following their reasoning we characterized the statutes as procedural and held that they did not create any new substantive rights. The employers involved, however, found procedural changes as expensive as substantive ones.

## II

Recognizing that the words "substantive" and "procedural" are not talismanic,[3] we conclude that the change in the law under consideration in these cases falls more on the procedural side than on the substantive side. These cases lie in the borderland where procedure and substance merge imperceptibly. "The precise meaning to be given 'substance' and to 'procedure' ought ... to be determined in the light of [the] underlying purpose to be fair to the individuals concerned." Cook, *Logical and Legal Bases of Conflicts of Laws*, 343 (1942). In determining the central question concerning retroactivity we should look to the purpose of the statute. The heart of the procedural/substantive nomenclature is both the nature of the change and its purpose. The Legislature's action reveals the peculiar nature of workmen's compensation law, particularly in the field of pulmonary disabilities, where disabilities often are not manifest until years after the last exposure to the causes of the disease. The Legislature insured that an employee suffering from occupational pneumonconiosis without measurable pulmonary impairment will not be barred from additional

---

[3] In pointing out the result oriented use of categories which frequently occurs we do not imply that there are not occasions when they are legitimately illuminating; however, at least one commentator would go so far as to abolish any attempted distinction whatsoever: "[t]he distinction between substantive and procedural law is artificial and illusory. In essence, there is none. The remedy and the predetermined machinery, so far as the litigant has a recognized claim to use it, are, legally speaking, part of the right itself. A right without a remedy for its violation is a command without a sanction, a *brutem fulmen*, i.e., no law at all." 1 Chamberlayne, *Evidence*, § 171 (1911).

benefits by giving him an award which can then be reopened if his disability increases to a measurable level. Under *W. Va. Code*, 23-4-16 [1974], the claimant who received no award could apply for a reopening only within three years of the date of injury but under this amendment the claimant is eligible for a reopening under the standard procedure applicable after an award has been granted, namely, not more than two reopenings within five years after the Commissioner's final payment on the original award, *W. Va. Code*, 23-4-16 [1974]. Significantly, all of the claimants in these actions would have been barred from reopening their claims because more than three years had elapsed since the date of last exposure. Thus, *W. Va. Code*, 23-4-6a [1978] may be perceived as a procedural change which granted the claimants the opportunity to reopen their claims for a five year period after the Commissioner's final order.

In addition to expanding the statute of limitations applicable to an employee suffering from occupational pneumoconiosis without measurable impairment, this statutory amendment under consideration, *W. Va. Code*, 23-4-6a [1978], codified the Legislature's recognition that the alteration and damage to lung tissue by reaction to the presence of minute particles of dust is a disability even though there may not be, as has been argued elsewhere by employers, a satisfactory method to evaluate the extent of such damage below 15%.

Prior to the enactment of *W. Va. Code*, 23-4-6a [1978], a man with diagnosable occupational pneumoconiosis had a comensable disease but often due to the inability of the tests to measure disabilities on ventilatory and blood gas studies he received no award notwithstanding the possibility that he had an actual impairment which could not be measured. This was a defect in medical testing rather than a defect in the law. Now the rate has been increased from zero to approximately 5% to take into account the probable defect in the medical tests. At first glance that appears to be the creation of a new right, but it is only an increase in benefits for an

existing right. Under *W. Va. Code*, 23-4-14 [1976] the Legislature has directed that if there are any changes in the compensation, "the claimant shall receive such increased or decreased benefits beginning as of the effective date of said increase or decrease." Certainly in the cases at bar if the claimants could have produced a new test which proved that they had an impairment of less than 15% but more than zero they would have been entitled to recover. Even though there may not be a satisfactory test, the claimants always had the cause of action even at the date of injury; as soon as they could have conceived of a way of proving their case they could have recovered.

### III

The cornerstone of our decision today rests on the knowledge that we have not impaired any reliance interest of any party by applying this statute retroactively. In *Lester, supra,* we retreated from the early theory that the Workmen's Compensation Act is based on contract since the coverage is now mandatory, *W. Va. Code,* 23-2-1 [1976]. We by no means abandon the date of injury as the operative date for the great part of the Act; however, we no longer feel constrained to maintain strict allegiance to the date of injury as a magical point. The "magic" of the date of injury pertains to contract law and thus is no longer relevant except to the extent that the equities of the case demonstrate a compelling reliance interest on the part of the employer or employee. If the Legislature wishes to have us consistently apply the date of injury to protect reliance interests they may say so expressly in the statute and the date they give will then apply. The date of injury is in many instances the most logical date for the tolling of any statute of limitations in this area, and is probably the least arbitrary of the alternatives; however, that is not sufficient reason to make it inviolate.

In determining whether a statute should be applied retroactively perhaps the most fundamental principle to which we look is the reliance since a person should be able to plan his conduct with reasonable certainty. The

traditional analysis invoked in determining the legitimacy of a statute's application is whether the statute abrogates a "vested" right. Since the vested right analysis tends to be as conclusory as the substantive/procedural analysis the better test is whether the individual has changed his position in reliance upon existing law,[4] or whether the retrospective act defeats the reasonable expectations of the parties it affects.[5]

The weighing of the factors involved also depends on the nature of the right upon which the individual has relied. While the United States Supreme Court has held that retroactively lifting the bar of a statute of limitations impairs a right in property actions, *Stewart v. Keyes*, 295 U.S. 403, 416-17 (1935), it has retroactively extended a bar in contract actions, *Campbell v. Holt*, 115 U.S. 620 (1885). Laws governing the incidents of ownership of property, in an economy where the incentive for work is largely the acquisition of wealth, would seem to rate very high on the "reliance" scale. Other types of law, such as tort law, do not demand the stability that a change in property law requires since presumably the individual's behavior is not directed by his knowledge of the law of torts. Tort law, like our Workmen's Compensation law, which is re-written by the Legislature every session, is an unsettled area of the law which does not reflect stability nor promote great reliance.

---

[4]Mr. Justice Holmes, returning to the question of retroactivity twenty-one years later, denied retroactive application of a statute requiring a toll for passage through a canal lock since, "[w]e must assume that the plaintiff went through the canal relying upon its legal rights and is not to be deprived of them because the Legislature forgot." *Forbes Pioneer Boat Line v. Board of Comm'rs*, 258 U.S. 338 (1922). In referring to his earlier decision in *Danforth, supra*, Holmes also noted that "when rights are asserted ... contrary to some strongly prevailing view of justice, Courts have allowed them to be defeated by subsequent legislation and have used various circumlocutions." *Id.* at 339-40.

[5]*See* Hochman, "The Supreme Court and the Constitutionality of Retroactive Legislation." 73 Harv. L. Rev. 692, 696 (1960). We have addressed this issue at length in *Bradley v. Appalachian Power Company*, ____W. Va.____, 256 S.E.2d 879 (1979).

Rules which we have established concerning retroactivity in the area of criminal law exemplify the fact that reliance is at the heart of the "substantive"/"procedural" distinction. The prohibition against retroactive legislation in the criminal area was developed at an early stage by the United States Supreme Court. In *Calder v. Bull*, 3 U.S. (3 Dall.) 386 (1798), a controversy over the application of the *ex post facto*[6] clause in the federal constitution was resolved by construing the prohibition to apply only to criminal statutes. While it is well established that the prohibition against *ex post facto* laws does not apply to procedural changes in criminal legislation, at the same time if those procedural changes operate in a harsh or arbitrary manner in regard to the defendant, then the prohibition against *ex post facto* laws applies, *Kring v. Missouri*, 170 U.S. 343 (1898). In practice, very few changes are perceived to be merely procedural because of the nature of the right which the criminal statute alters.[7] If the procedural change is not perceived to deny the accused a defense available under the laws at the time of his offense, or operates only in a limited and unsubstantial manner to his disadvantage, then the provision may be applied retroactively.[8] Thus it may be seen that limitations on retroactive criminal legislation are particularly severe, while those in the civil area turn upon the amount of substantial reliance. The

---

[6]An *ex post facto* law was defined as "[e]very law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the defense, in order to convict the offender." *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798).

[7]*Lindsey v. Washington*, 301 U.S. 397 (1937) (changing a maximum term applicable to parole release to a mandatory term); *Thompson v. Utah*, 170 U.S. 221 (1882) (statute reducing number of trial jurors); *Kring v. Missouri*, 170 U.S. 343 (1898) (statute reducing number of jurors necessary to render a verdict).

[8]*Beazell v. Ohio*, 269 U.S. 167 (1925) (statute allowing persons indicted for felony to be tried jointly); *Thompson v. Missouri*, 171 U.S. 380 (1898) (statute making previously inadmissible evidence admissible); and *Hopt v. Utah*, 110 U.S. 574 (1884) (statute rendering competent witnesses who previously were incompetent).

ever-changing Workmen's Compensation Act is not the type of law which inspires great reliance in momentous affairs.

If it were true that the employers had relied to their detriment upon the earlier construction of the statute, then we would not apply this statute in a retroactive fashion. Upon a close examination of the economic realities, however, it is apparent that this will not have a dramatic or even perceptible impact on employers. The insurance premiums for the present year will remain constant and the employers will be able to adjust their prices for the following year's premiums accordingly. While it is true that workmen's compensation premiums are part of the cost of doing business, this State is not alone in raising its benefits and, therefore, is not placing employers in an unfair competitive position *vis à vis* employers in other states.

Thus these cases follow the precedents we have established in *Sizemore* and *Lester, supra,* that cases in litigation will receive the benefit of statutory changes favorable to the employee whenever possible. Since the Appeal Board is empowered to hear any claim *de novo,* prospective claimants who have pending claims in any stage of litigation under *W. Va. Code,* 23-4-6a [1978] up to and including the Appeal Board may recover. Claims can, however, be denied when all litigation has been ended by final orders which are no longer appealable and the doctrine of *res judicata* applies.

*No. 14522*
*No. 14537*
*No. 14538—Reversed.*
*No. 14535*
*No. 14589—Affirmed.*