271 S.E.2d 604 (1980)
Lessie C. JORDAN
v.
STATE WORKMEN'S COMPENSATION COMMISSIONER and Appalachian Power Co.
No. 14614.
Supreme Court of Appeals of West Virginia.
April 4, 1980.
Dissenting Opinion October 23, 1980.
*605 George G. Guthrie, Charleston, for appellant.
Love, Wise, Robinson & Woodroe, Joseph S. Beeson, M. Ann Bradley, Charleston, for appellee.
MILLER, Justice.
The appellant, Lessie C. Jordan, is the widow of Theodore Franklin Jordan, who before his death was an employee of Appalachian Power Company, the appellee. Mrs. Jordan contends that the Workmen's Compensation Appeal Board [Appeal Board] erred in refusing to award her a greater benefit than that received by her husband prior to his death. She also states that W.Va.Code, 23-4-14, violates the Equal Protection Clause of the State and Federal Constitutions. We disagree, and affirm the Appeal Board.
On September 14, 1966, while working for Appalachian, Mr. Jordan was injured. Based on that injury, the Workmen's Compensation Commissioner on September 29, 1970, ordered a total permanent disability award of $42.00 per week. After the death of Mr. Jordan on September 28, 1976, the appellant filed a timely application for dependent's benefits. By order of October 28, 1976, the Commissioner awarded her benefits at the rate of $180.75 a week. Appalachian protested the amount of the award, but not appellant's eligibility therefor.
Hearings in the matter were held in April and October of 1977. In August of 1978, the Commissioner affirmed his prior order awarding benefits at the rate of $180.75 a week. Appalachian appealed to the Appeal Board, and by order of May 29, 1979, the Appeal Board concluded the amount of the award was incorrect and reversed the Commissioner's order.
Appellant contends that the Appeal Board misapplied the principles of Sizemore v. State Workmen's Compensation Commissioner, W.Va., 219 S.E.2d 912 (1975), where it was held that under the Workmen's Compensation statute, a dependent's benefits are a separate and distinct claim. Sizemore also held that a dependent's right to benefits is determined as of the date of the employee's death. Appellant, therefore, argues that since her husband died on September 28, 1976, her right to dependent benefits arises as of that date.
We do not disagree that the date of the employee's death is the date that his dependent's claim comes into existence. However, Sizemore is not dispositive of the issue, since it construed W.Va.Code, 23-4-10, as it existed prior to its 1974 amendments. Prior to 1974, this Code section contained specified dollar amounts that were to be paid to dependents. In 1974, W.Va.Code, 23-4-10, was amended to provide that dependents "shall be paid ... in the same amount as was paid ... the deceased employee for total disability had he lived." W.Va.Code, 23-4-10(b). Thus, dependents no longer receive a separately stated dollar amount for dependent benefits, but obtain the same amount as was paid to the deceased employee had he lived.
There is no dispute that during his lifetime, Mr. Jordan received $42.00 a week in benefits. Because he was injured prior to July 1, 1971, he did not receive the benefit of W.Va.Code, 23-4-14, which was changed in 1971 to permit claimants injured after July 1, 1971, to obtain the advantage of any changes made to the schedule of monetary benefits.[1]
*606 We conclude that the Appeal Board is correct, and that when W.Va.Code, 23-4-10(b), is read in conjunction with W.Va. Code, 23-4-14, a dependent is entitled to receive the same amount of monetary benefit that the deceased claimant was receiving during his lifetime.
The Appeal Board's decision does not arise from an erroneous reading of Sizemore, since W.Va.Code, 23-4-10, as interpreted in Sizemore has been changed by the 1974 amendments. We have indicated in Pnakovich v. State Workmen's Compensation Commissioner, W.Va., 259 S.E.2d 127, 130 (1979), that where the Legislature establishes a clear statutory provision relating to the date or manner in which benefits are to be calculated, we will follow such prescription. This is but a corollary to the conventional rule that where a statute is plain and unambiguous, courts will give it full effect. Richardson v. State Compensation Commissioner, 137 W.Va. 819, 74 S.E.2d 258 (1953); Carper v. Kanawha Banking & Trust Co., W.Va., 207 S.E.2d 897 (1974); State v. Elder, 152 W.Va. 571, 165 S.E.2d 108 (1968).
The appellant contends that by fixing July 1, 1971, as the operative date on which injuries are classified under W.Va. Code, 23-4-14, the Legislature has violated the Equal Protection Clauses of the State and Federal Constitutions. This argument centers on the fact that if the injury occurs prior to July 1, 1971, then under W.Va. Code, 23-4-14, any increase in the schedule of benefits cannot be obtained, whereas if the injury occurs after that date, such increases can be obtained.
We have traditionally held, as has the United States Supreme Court, that the Equal Protection Clause does not preclude the Legislature from enacting statutory classifications. Syllabus Point 5, State ex rel. Heck's, Inc. v. Gates, 149 W.Va. 421, 141 S.E.2d 369 (1965). In Cimino v. Board of Education of County of Marion, W.Va., 210 S.E.2d 485, 490 (1974), we followed the federal approach and held that there are two tests where equal protection violations are asserted. If the statute impinges on fundamental or constitutional rights, the State must show a compelling State interest to sustain the classification. On the other hand, if the statute does not impinge on such sensitive rights, the State must only demonstrate that the statutory classification bears some rational relationship to a legitimate State purpose. See, e. g., Woodring v. Whyte, W.Va., 242 S.E.2d 238 (1978); State ex rel. Piccirillo v. City of Follansbee, W.Va., 233 S.E.2d 419 (1977); San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).
The appellant concedes that W.Va.Code, 23-4-14, affects economic rights and not fundamental or constitutional rights. In Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), the Court remarked that statutes "adjusting the burdens and benefits of economic life come to this Court with a presumption of constitutionality." [428 U.S. at 15, 96 S.Ct. at 2892, 49 L.Ed.2d at 766].
The 1971 amendment to W.Va.Code, 23-4-14, quoted in the earlier portion of the opinion, was primarily designed to enable those persons injured after the effective date of the Act to obtain an increase in benefits at any time there was a statutory increase in benefit payments. It can hardly be questioned that this was a beneficial provision. From a purely rational standpoint, it also seems obvious that the Legislature did not want to establish this same right for everyone who had been injured prior to July 1, 1971, because it would have placed a severe financial drain on the Workmen's Compensation Fund to pay enhanced benefits on prior claims where the employer's premiums had already been paid based on the lower benefit rates.
It is obvious that any time a statute is amended to provide for enhanced benefits *607 as of a certain date, there is a certain arbitrariness in the time-drawing process, but this alone does not give rise to an equal protection problem. We confronted this question in Woodring v. Whyte, supra, under the good time credit statute, W.Va. Code, 28-5-28, and concluded that no equal protection problem existed because inmates coming into the penal system after the effective date of the Act received full benefits, while others already incarcerated obtained only a partial benefit on their remaining sentence. An even more analogous case is Califano v. Webster, 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977), where an amendment to the Social Security Act was upheld against a claim of equal protection violation. The amendment provided for enhanced benefits for men, but only those reaching age 62 after the effective date of the Act.
We, therefore, conclude that W.Va.Code, 23-4-14, by extending increases in benefit rates to only those claimants who are injured after July 1, 1971, does not violate the Equal Protection Clause of the United States or West Virginia Constitutions as to those who were injured prior to July 1, 1971.
For the foregoing reasons, we affirm the decision of the Workmen's Compensation Appeal Board.
Affirmed.
McGRAW, Justice, dissenting.
In order to achieve a preconceived result the majority errs in applying principles of law in a manner which ignores the purposes of Workmen's Compensation. After the legal dust cloud surrounding the first part of the majority opinion settles, the real reason behind today's decision can be seen. The following excerpt from the majority opinion stands as a luciferous example of what has been traditionally one of the most important considerations in deciding Workmen's Compensation cases.
[I]t ... seems obvious that the legislature did not want to establish this same right for everyone who had been injured prior to July 1, 1971, because it would have placed a severe financial drain on the Workmen's Compensation Fund to pay enhanced benefits on prior claims where the employer's premiums had already been paid based on the lower benefit rates.
If one of the purposes of Workmen's Compensation is to prevent the injured and maimed working people and their loved ones from becoming destitute and wards of the State, as the legal literature memoralized by Professor Larson would have us believe, 1 Larson, Workman's Compensation Law, § 2.50 (7th ed. 1978), today's decision contradicts that purpose. While the flames of inflation rampantly consume the sustenance of those on governmentally prescribed incomes, the gubernatorial fireman peers helplessly from his gulliverian repose, restrained by a web of vested interests. It is unseemly, compassionless, unrealistic and inimical to the purpose of Workmen's Compensation for the Court to refuse this widow the increased benefit simply because of some judicially implied reliance interest of employers. If such a reliance principle ever existed, it was extinguished by the amendment to W.Va.Code 23-4-14 and decisions such as Pnakovich v. State Workmen's Compensation Commissioner, W.Va., 259 S.E.2d 127 (1979), cited by the majority. In the Pnakovich syllabus we said "West Virginia Code 23-4-6a (1978) which provides that a claimant who has occupational pneumoconiosis with no measurable impairment may receive 20 weeks of benefits, is a procedural modification applicable to all claims pending before the Commissioner or the Appeal Board on the date the statute became effective." I read this statement of law to say that "[an amendment to the compensation law] is a procedural modification applicable to all claims pending ... on the date the statute becomes effective." This will ultimately become the law with the only reliance interest being that accruing to the benefit of the injured employee.
Pnakovich aside, under our holding in Charles v. State Workmen's Compensation Commissioner, W.Va., 241 S.E.2d 816 (1978), we said that the date of death of the employee *608 fixes the dependent's rights. Even under that rule, narrower than Pnakovich, Mrs. Jordan would recover the higher benefit.
Just as in Hudson v. State Workmen's Compensation Commissioner, W.Va., 256 S.E.2d 864 (1979), it is a travesty that the majority here denies Mrs. Jordan and those in like circumstances the equal protection of the law.
NOTES
[1] The material part of W.Va.Code, 23-4-14, is:

"In any claim for injuries, including occupational pneumoconiosis and other occupational diseases, occurring on or after July one, one thousand nine hundred seventy-one, any award for temporary total, permanent partial or permanent total disability benefits or for dependent benefits, shall be paid at the weekly rates or in the monthly amount in the case of dependent benefits applicable to the claimant therein in effect on the date of such injury. If during the life of such award for temporary total, permanent partial or permanent total disability benefits or for dependent benefits, the weekly rates or the monthly amount in the case of dependent benefits are increased or decreased, the claimant shall receive such increased or decreased benefits beginning as of the effective date of said increase or decrease."