## CHARLESTON.

MARY PROFFITT *v.* STATE COMPENSATION COMMISSIONER *et al.*

(No. 6589)

Submitted January 8, 1930. Decided January 14, 1930.

*Froe, Capehart & Miller,* for appellant.

*Howard B. Lee,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for respondents.

LIVELY, PRESIDENT:

The vital question before the Commissioner was whether Charlie Proffitt's death resulted from an accident received by him in the course of and arising from his employment. He decided the question in the negative on March 13, 1929, and claimant obtained this "appeal." We are asked to review the evidence and reverse the Commissioner because, as asserted by claimant's · counsel, the Commissioner clearly erred in the interpretation and effect of the evidence. It may be observed that these so-called "appeals" from the finding of the Commissioner are entertained by this Court as if brought here under process of original jurisdiction such as mandamus, prohibition or the like. That is the only way the "appeal" provided for in the statute can be upheld so as to give this Court jurisdiction. The Compensation ·Commissioner is not a part of the judiciary of the state, and under the constitution appeals to this Court lie only from judicial decisions of inferior courts. . The discussion of our power to review the orders of the Public Service Commission, found in *United Fuel Gas Co. v. Public Service Commission,* 73 W. Va. 571, 80 S. E. 931, applies to orders and findings of the Compensation Commissioner. Hence, in order that the findings of the Commissioner may be annulled, it must appear that the claimant has a clear legal right to his compensation; and we

have held in numerous cases that if there is substantial evidence to support the finding of the Commissioner it will not be disturbed. *Heaton v. Compensation Commissioner,* 106 W. Va. 563, 146 S. E. 368.

It appears that Charlie Proffitt, a miner, employed by the Dry Fork Colliery Company, was injured by a slate fall on October 27, 1927. He was treated on the day of the injury by Dr. D. D. Hatfield, and sent by him to the Welch Hospital No. 1. Here an examination was made which disclosed a complete comminuted fracture of the fifth metacarpal one-half inch from the metacarp-phalangeal joint of the left hand. Dr. Hatfield continued, at intervals, to examine Proffitt's hand, and in January reported to the Compensation Department that wounds were healed but that Proffitt complained "a lot and looks to have a permanent ankylosis of the small finger." In February, his report indicated the condition of the injured man as "ankylosis of the index and second finger." The Compensation Department then directed Proffitt to report to Dr. H. G. Camper, a practicing physician at Welch, West Virginia, for an examination. This he did, and Dr. Camper's report stated: "I can think of no surgical treatment that will give this man better use of his fingers as the tendons are cut and there is definite ankylosis. I think he would have a much better hand if the middle, ring, and index fingers were amputated at the distal third of the first phalanx." Dr. Camper recommended an 18% disability, which was granted in February, 1928, and Proffitt received compensation until his sudden death on April 20, 1928.

Mary Proffitt, the widow of the employee, contends that her husband's death was caused by the injury to his left hand. Her husband, according to her affidavit, had not been ill for about ten years prior to the injury in 1927. She stated that, after the injury, her husband's hand had never been "opened to release bruised blood" and that "about two weeks before his death, his hand began to swell and turn blue in spots, and his arm also became discolored; during this time he complained of sharp shooting pains going out from his hand through his arm to his heart." Similar statements were made by neighbors of Proffitt. The widow stated also that the night

before her husband's death he said: "It seemed as if a heavy weight went from his hand to his head down to his heart," and he had a purplish streak up his arm to above his heart, where he had a black spot over his heart about "the size of my hand." There is evidence also that one Crockett Mullens, a representative of the health department, who was in the vicinity in which the Proffitts lived for the purpose of vaccinating for smallpox, refused to vaccinate Charlie Proffitt "because Charlie Proffitt was filled with bruised and poisoned blood." This is not substantiated by Mullens and there is nothing in the record to indicate that any effort was made by claimant or by her counsel to secure a statement from Mullens. But, predicated upon these facts and incorporated in a hypothetical question propounded to Dr. M. H. Goff, a practicing physician of this state, he was asked to state the cause of Charlie Proffitt's death, and he answered as follows: "Because of a history of good health before his accident and because of the statement of a condition that simulates gangrene that began in the broken hand after the accident, which followed the course of a true gangrene, growing worse and extending higher on the arm; because of the statements of relatives and an employee of the State Health Department that the hand looked as though it contained bruised blood which is the way a gangrenous hand looks; and in the absence of any complaints by the deceased other than those beginning in and referable to the right hand and arm, and because of his sudden death with no preceding confinement, it is my opinion that the patient died from a complication of the injury to his right hand, probably cerebral embolus from the gangrenous part."

But, Dr. N. H. Dyer, also a practicing physician, who examined the body of Proffitt about twelve hours after he died, stated that in his opinion "angina pectoris or a like heart attack" has caused Proffitt's death. There is no evidence that he had attended Proffitt previously, but his opinion rested partially upon Mary Proffitt's statement to him at the time of the examination that her husband had had attacks of "pain about the heart and radiating down the arm for over a period of a year or two, and had used strychnine for it."

When asked the question if he could associate Proffitt's death with the injury sustained by him on October 27, 1927, Dr. Dyer replied: "I cannot; the wound had healed and showed no signs of recent infection; and the pain connected with his injury, if present, would not be sufficient in my opinion to cause his death." To a similar question, Dr. Camper, who made the examination hereinbefore mentioned stated: "The wound had entirely healed; and I can see no connections between this injury and his death." Dr. D. D. Hatfield stated also that there was no association between Proffitt's death and his injury.

Within the statutory period, the widow made application for compensation, contending that her husband's death was due to an injury received in the course of and resulting from his employment. On March 13, 1929, the widow was informed that no award would be made. From this ruling of the Commissioner she now appeals.

We are met at the threshhold of this case with the statute passed March 7, 1929, effective from date of passage, regulating the procedure for appeals to this Court in cases where the Commissioner has held that the claimant is barred from participation in the fund on any ground going to the basis of claimant's right, as for instance, that the injury was self-inflicted, or was not received in the course of and resulting from the employment (the case here). Acts 1929, chap. 71, sec. 43. Under this new statute, where the Commissioner has made an award going to the basis of the claimant's right to compensation, the Commissioner shall give notice in writing to the employer, employee or his dependent as the case may be, of his action, which shall be final, unless the employer, employee or his dependent shall within ten days after receipt of the notice object to the finding in which event notice shall be given and a time set for hearing of evidence, which evidence when taken shall be a part of the record. The action of the Commissioner upon the rehearing shall be final unless appealed from by either the claimant or the employer within ninety days after notice of the final action. This procedure was not complied with. Unless that procedure be followed no appeal will lie to this Court. *State ex rel. Meeks v. State*

*Compensation Commissioner,* 108 W. Va. 68, 150 S. E. 230. It will be observed that the act above referred to became effective March 7, 1929, and the decision of the Commissioner deciding the death of Proffitt was not caused by the injury to his hand, was rendered on March 13, 1929. It is reasonable to assume that counsel was not advised of the passage of the statute within ten days after the Commissioner's decision, and hence procedure was not followed. The injury and death were prior to the enactment of the new statute, but when the statute became effective, it applied to and governed the proceeding then pending. *McShan v. Heaberlin,* 105 W. Va. 447, 450, 143 S. E. 109. It will be further noted that the application for appeal from the order of March 13, 1929, was not filed here until June 29, 1929, more than ninety days after the decision was rendered.

The appeal will be dismissed as improvidently awarded.
*Appeal dismissed.*