DAVID W. DICKERSON

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER, *and*
U. S. STEEL CORPORATION

(No. 12868)

Submitted January 27, 1970.     Decided February 10, 1970.

Dissenting Opinion March 6, 1970.

Rehearing Denied March 26, 1970.

*Campbell, Love, Woodroe & Kizer, George W. S. Grove, Jr.,* for appellants.

*R. L. Theibert,* for appellee.

BROWNING, PRESIDENT:

This is an appeal by United States Steel Corporation from a final order of the Workmen's Compensation Appeal

Board entered June 30, 1969, which order reversed a final order of the Workmen's Compensation Commissioner entered February 20, 1969.

Claimant, appellee herein, sustained a hand injury while working for the employer on November 3, 1966. For this injury he received extensive treatment during which time he lost no time from work. However, it eventually became apparent that the right index finger would have to be amputated. Claimant was admitted to a hospital on July 26, 1967, in Welch, and from that date until October 30, 1967, he was required to be away from his work. During this period, 12 5/7ths weeks, he was paid temporary total disability benefits. On referral by the Commissioner, a physician estimated an overall permanent partial disability of twenty per cent composed of the statutory award of ten per cent for loss of the index finger and ten per cent for additional disability to the same hand. By order dated February 27, 1968, the Commissioner granted the ten per cent statutory award and by order dated March 15, 1968, he granted the additional ten per cent permanent partial award as recommended by the physician. On March 19, 1968, the Commissioner entered a "corrective" order by which he reduced the additional ten per cent award by the amount of the temporary total benefits paid for the 12 5/7ths weeks.

This order was protested by the claimant, and at a hearing held in Welch on January 30, 1969, counsel for both parties stipulated that the lost time resulted solely from the amputation and the necessary subsequent treatment. Here is what transpired:

\* \* \*

BY MR. THEIBERT:

\* \* \*

We stipulate that 12 5/7ths weeks' lost time was because of the amputation of the right index finger.

It is the claimant's position that this 12 5/7ths weeks' total temporary disability benefits, since it was due to the amputation, should not be deducted either

from the statutory award or from the additional 10% that the claimant received because of other residuals.

BY MR. GROVE:

It is our position that it can not be deducted from the statutory award. It must be deducted from any additional disability granted. And since this is a legal question it seems the claim will have to be submitted for a ruling by the Commissioner on the legality.

\* \* \*

It is apparent from this that the parties desired to reduce the controversy solely to the legal question involved. (Although in oral argument before this Court it appeared as though there was some misunderstanding as to the full implications of this stipulation, we believe that the parties stipulated to the fact plainly stated therein, *i.e.*, that the lost time from work resulted from and only from the amputation of the finger and recovery and treatment therefor.)

On February 20, 1969, after the hearing, the Commissioner held that:

[I]t is further ordered and directed that payment of all compensation on a total temporary disability basis be deducted from the 20% permanent partial disability award.

This was appealed by the claimant, and was reversed by the Appeal Board on June 30, 1969. In its opinion, the Appeal Board stated:

The evidence clearly establishes that the lost time involved in this case and for which total temporary disability payments were made under the provisions of Code 23-4-6(a) resulted solely from the amputation of the finger and not from the other disability claimant sustained to his finger.

We, therefore, believe that the statutes should have a reasonable and practical application so as to carry out the remedial purposes thereof. Consequently, we hold that under the provisions of Code 23-4-6(i),

the payments made to claimant in the amount of $534.00 upon a total temporary disability basis should not be deducted from the 20% permanent partial disability awarded him.

It is from this ruling that the employer appeals.

Prior to the 1965 amendment of Code 23-4-6, subdivision (i) read as follows:

(i) Where an injury results in temporary total disability for which compensation is awarded under subdivision (a) of this section and such injury is later determined permanent partial disability under subdivision (c), the amount of compensation so paid shall be considered as payment of the compensation payable for such injury in accordance with the schedule in subdivision (c).

This is the proviso added to subdivision (i) by the 1965 amendment:

*Provided further,* That in cases where the amount of permanent partial disability is specifically provided for under subdivision (d) of this section, payments made under subdivision (a) shall not be considered as payment of the compensation for such injury. Chapter 162, Article 4, Section 6, Acts of the Legislature, 1965 Regular Session.

Subdivision (c), insofar as applicable, provides for payment of four weeks of compensation for each per cent of permanent disability from one to eighty-four per cent inclusive. The provision in subdivision (i) that previous temporary total disability payments made under subdivision (a) should be deducted from any permanent disability award made "in accordance with the schedule in subdivision (c)" was not changed by the 1965 amendment. It is not clear from this record why the Workmen's Compensation Commissioner divided the twenty per cent permanent partial disability of the claimant into two awards. It is clear from the provisions of Code 23-4-1, as amended, and from the decisions of this Court, that an injury is an isolated fortuitous event received by an employee in the course of and resulting from his

employment with his employer. In some instances the "fortuitous event" may result in disability to more than one part of the employee's body but it is only one "injury." It is clear also from the pertinent provisions of the statute that when a claimant has attained the maximum degree of improvement subsequent to his injury that he shall be granted such permanent disability as the medical and other evidence warrants. There is no provision in the Workmen's Compensation law which empowers the Commissioner to make an award with regard to one injured part of a claimant's body, litigate that question if there is objection thereto and at some subsequent time enter another order with regard to the disability to another portion of the claimant's body and start the process all over again. Unless the claimant objected to such piecemeal handling of his claim he might be confronted with the law as stated in the two syllabus points of *Taylor v. Workmen's Compensation*, 151 W.Va. 409, 151 S.E.2d 283:

> 1. Where the compensation commissioner makes an award of compensation based upon a finding of permanent partial disability, which award becomes final by failure to protest against or appeal therefrom, the case cannot be reopened, or any additional compensation awarded unless there is a showing of a progression or aggravation in the claimant's condition, or some fact or facts not theretofore considered by the commissioner in his former findings and which would entitle the claimant to a greater benefit than that previously granted.

> 2. Facts appearing in the record at the time of an award of compensation for permanent partial disability will be treated as having been considered by the commissioner in making such award.

It might have been impossible for the claimant to have made a showing for a reopening of his claim under the provisions of 23-5-1a, as amended, with regard to the additional injury to his hand if he had not protested the ten per cent award for the specific loss by amputation.

It is the contention of the employer in this case that since a part of the twenty per cent permanent partial disability

award which was granted to the claimant after a hearing comes under the first part of subdivision (i) of Section 6, quoted above, which provides that: "[T]he amount of compensation so paid shall be considered as payment of the compensation payable for such injury in accordance with the schedule in subdivision (c)," the temporary total disability payments of 12 5/7ths weeks must be deducted from the twenty per cent permanent partial disability award. In other words, since part of the twenty per cent award was for a permanent disability other than the amputation, the deduction is contrary to the statutory provisions even though all of the lost time for which the 12 5/7ths weeks of temporary total disability was paid resulted from the amputation. Upon the facts of this case, the claimant contends to the contrary relying upon what he states to be "clear and unambiguous" language of the 1965 amendment. Inasmuch as the order of the Workmen's Compensation Appeal Board must be affirmed upon a jurisdictional ground we make no determination as to whether the pertinent section after the 1965 amendment is, upon the facts of this case, clear and unambiguous or, if an ambiguity was created by the amendment, whether the section was properly construed by the Workmen's Compensation Appeal Board.

Earlier in this opinion it was stated that by order of February 27, 1968, the Commissioner granted a ten per cent statutory award for loss of the index finger, that being a specific award provided for by 23-4-6(d), and on March 15, 1968, granted an additional ten per cent permanent partial disability award as recommended by the examining physician for disability to the hand which was in addition to the disability arising from the amputated index finger. On March 19, 1968, the Commissioner in what he designated as a "corrected letter" granted the claimant a ten per cent permanent partial award for disability of the hand exclusive of the finger and deducted therefrom the 12 5/7ths weeks of compensation theretofore paid upon a temporary total disability basis. There was no protest by the employer to the order of March 15, 1968, and it is the view of this Court that thirty days after its entry it became final. It is true that the jurisdictional

question has not been raised by counsel in pleading, motion, briefs or oral argument, but the decisions of this Court are multitudinous to the effect that lack of jurisdiction may be taken notice of by this Court of its own motion. Many of those cases are gathered and cited in the footnotes to Section 107 of 1B Michie's Jurisprudence, page 212. This is the third syllabus point of the recent case of *Montgomery v. Montgomery*, 147 W.Va. 449, 128 S.E.2d 480: "The failure to properly obtain a bill of exception where required within the allowed time or an extension thereof is jurisdictional and may be raised by this Court on its own motion." Reference is also made to the many cases cited in the opinion of that case to that effect.

The question arises as to whether this rule is applicable to workmen's compensation cases. That question has been answered several times in the affirmative. The most recent case is that of *Partlow v. Workmen's Compensation Commissioner*, 150 W.Va. 416, 146 S.E.2d 833. This is the first syllabus point of that case: "The state compensation commissioner has no power or jurisdiction to vacate, set aside or modify a final order made by him, except in instances in which it appears that he lacked jurisdiction to enter such order or that it was made or procured through fraud or mistake." Several comparatively recent decisions of this Court are cited in the opinion. One of these, *Stewart v. State Compensation Director*, 150 W.Va. 103, 144 S.E.2d 327, is directly in point. In that case the Commissioner on June 4, 1963, granted the claimant a ten per cent permanent partial disability award and informed the parties that they had thirty days within which to file objection thereto. On July 3, the Commissioner entered an order setting aside his "ruling" of June 4 for reasons stated in the order. The pertinent syllabus point of the *Stewart* case is syllabus point 1 of *Cottrell v. State Compensation Commissioner*, 145 W.Va. 336, 115 S.E.2d 153: "The State Compensation Commissioner has no power or jurisdiction to vacate, set aside or modify a final order made by him, except in the instances specifically provided by statute." In *Collins v. State Compensation Commissioner*, 145 W.Va. 774, 117 S.E.2d 313, the only syllabus point is a

quotation of the first syllabus point of the *Cottrell* case. In the *Collins* opinion is this statement: "The only possible exception to this rule would be a determination by the Commissioner upon competent proof that the final order was made or procured through fraud or mistake." Several cases from this jurisdiction and elsewhere are cited in support of that statement. In the instant case there is, of course, no contention that any fraud was exercised upon the Commissioner to induce him to enter the "corrected letter" order of March 19, 1968. The following quotation from the *Stewart* opinion, we believe, is an answer to any other reason that he might have had for setting aside the March 15 order and entering the March 19 order:

> That leaves only one possibility by which the commissioner could have set aside the permanent partial disability award and that is because of "mistake". It is true, as heretofore noted, that the commissioner in setting aside that award did so on the ground that the award had been "erroneously entered" and counsel for claimant contends that the words "erroneous" and "mistake" are synonymous. However it is the view of this Court that *a "mistake" which would justify the setting aside of such an award must be something more than an erroneous decision of the commissioner.* For example, if three doctors had stated that the claimant had a thirty per cent permanent partial disability and a clerk in the office of the department had misread the thirty per cent and made a notation of eighty per cent instead and such an award was made, this Court is of the view that the commissioner would have authority, after a period of protest or appeal had passed, to rectify such a mistake. However, the "mistake" by which the commissioner would justify the setting aside of this award was in the nature of additional medical testimony qualifying the evidence he had before him at the time he made the alleged mistake. If the commissioner had this authority there would never be an end to workmen's compensation litigation. The thirty day protest period and the thirty day appeal period to the board would become meaningless. It is our opinion that those provisions are mandatory with the possible exceptions hereinabove noted. (Emphasis added.)

It may be that after entry of the March 15 order the Commissioner changed his mind as to the law of the case. If so, then that is not the kind of "mistake" that would justify the setting aside of one order and the entry of another. To repeat, from the above quotation, "If the commissioner had this authority there would never be an end to workmen's compensation litigation."

As to the effect of time on the jurisdiction of a circuit court and related jurisdictional matters, see *State v. Tinovits*, 72 W.Va. 531, 78 S.E. 664; *Lemley v. Wetzel Coal & Coke Co.*, 82 W.Va. 153, 95 S.E. 646.

Of course, if a provision of Chapter 23 of the Code imposes a mandatory, nondiscretionary duty upon the Commissioner for which mandamus will lie to command compliance a different situation arises. See *Pugh v. State Compensation Commissioner*, 113 W.Va. 84, 166 S.E. 817, and *Reed v. State Compensation Commissioner*, 112 W.Va. 524, 166 S.E. 282. In those cases the Commissioner attempted to "graduate for the loss of a leg" below the knee and grant claimants only a forty per cent permanent partial award where the amputations were only a few inches above the ankle although the statue provided, as it does now, for a forty-five per cent award for amputation of a leg "below the knee." A writ was awarded in each case long after the original forty per cent award requiring the Commissioner to grant an additional five per cent award. There is no contention even by the able counsel for the employer that the 1965 amendment is such as to be thus categorized.

It is the view of this Court that the Workmen's Compensation Commissioner was without power under the provisions of Chapter 23 of the Code, as amended, that being the sole authority vested in him, to set aside the March 15 order; that he was without jurisdiction to do so and inasmuch as there was no protest to that order by either the employer or the claimant within the statutory period thereafter it became and is final.

The order of the Workmen's Compensation Appeal Board of June 30, 1969, is affirmed and this decision will be certified to the Workmen's Compensation Commissioner and the Workmen's Compensation Appeal Board.

*Affirmed.*

CALHOUN, JUDGE, dissenting:

Respectfully, I dissent. In my opinion, the Court in this case, sua sponte, has seized upon an alleged irregularity which has been labeled as "jurisdictional" in character and, on that basis, has decided a significant legal question not previously adverted to or raised by anybody at any stage of the case, with the unfortunate result that counsel for the parties have been denied an opportunity to be heard in relation to the question thus decided. I believe the Court should be eager even now to have that important question discussed by briefs and oral argument of the two able and experienced attorneys who represent the respective parties in this case.

The Court has held that the commissioner's ruling of March 15, 1968, which merely made an award of 10% in addition to the previous 10% statutory award for loss of a finger, became final and that the commissioner, therefore, lost jurisdiction to change the finding thereby made. My view is that the commissioner, by his "corrected letter" dated March 19, 1968, did not vacate or change his ruling which had been made four days before. He had held that the claimant was entitled to an award of 10% in addition to the statutory award. That ruling was never changed by the commissioner. On the contrary, that ruling of the commissioner was consistently adhered to by him after it was made. The commissioner did not undertake to change the aggregate award of 20% made to the claimant, by increasing, decreasing or otherwise altering it.

The question presented to the Court upon the appeal from the ruling of the appeal board was the single legal question whether the commissioner was authorized, by the provisions

of Code, 1931, 23-4-6(i), as amended, to consider the latter award of 10% as having been partially paid by total temporary benefits previously paid to the claimant. For my purposes, I will refer to this as a question of "deductibility."

The question of deductibility was not specifically or expressly decided, one way or the other, by the commissioner in his ruling of March 15, 1968. Perhaps it would have been superfluous for him to have done so, for the simple reason that the clear, unambiguous, mandatory language of the statute rendered unnecessary a decision of the question of deductibility. In relation to that question, the commissioner had no discretion. His duty under the statute was clear and mandatory. By general principles of law, in my opinion, the clear language of the statute became a part of the March 15, 1968, ruling.

I believe that the Court was wholly unwarranted in its conclusion that the commissioner made an error of law in construing the statute in making additional award of 10% and that the commissioner's alleged ruling on the question of deductibility therefore became final. A far more reasonable construction of the commissioner's action is that, by a notification which he designated as a "corrected letter", he was merely undertaking to avoid any possible misunderstanding of his ruling of March 15, 1968, which might have resulted from a mere inadvertence, oversight or "mistake". It is reasonable to assume that the mere inadvertence, oversight or mistake was chargeable to some clerical assistant in the commissioner's office.

This Court heretofore has held repeatedly that the right to workmen's compensation benefits is based wholly on the pertinent statutes and in no sense based on the common law; that such statutes are sui generis and controlling; that the rights, remedies and procedures thereby provided are exclusive; that the commissioner is legally authorized to award and to pay benefits and that a claimant is legally authorized to demand payment of benefits only in such manner and in such amounts as are authorized by applicable statutes. I

18

believe, therefore, that, in relation to the question of what actions of the commissioner are "jurisdictional" and in relation to the question of what rulings of the commissioner are "final", legal principles and court decisions relating to courts of law are, at most, merely persuasive on the basis of analogy.

Code, 1931, 23-5-1, as amended, provides, generally speaking, that, upon the making of any award, the commissioner shall give notice in writing to the employer and to the claimant, and that such action of the commissioner shall become final, unless the employer or claimant shall, within thirty days after receipt of such notice, object in writing to such finding. Within the thirty day period, the claimant protested the commissioner's order and a subsequent hearing was had. It seems clear to me, therefore, that the commissioner's ruling of March 15, supplemented by his "corrected letter" written four days later, did not become final. As a consequence of the protest made by the claimant, finality of the order was avoided. To hold otherwise, it seems to me, is to hold that the subsequent hearing was but an exercise in futility.

I would have decided the appeal on its merits, and, on that basis, I would reverse the ruling of the appeal board.