295 S.E.2d 659

**Virginia HUBBARD, Widow, etc.**

v.

**SWCC AND PAGETON COAL CO.**

No. 15237.

Supreme Court of Appeals of
West Virginia.

Dec. 18, 1981.
Dissenting Opinion Sept. 3, 1982.

Neely, J., concurred and filed opinion.

Miller, C. J., dissented and filed opinion.

J. W. Feuchtenberger, Kwass, Stone, McGhee & Feuchtenberger, Bluefield, for appellant.

Philip A. LaCaria, Welch, for appellee.

McGRAW, Justice:

This is an appeal from an order of the Workmen's Compensation Appeal Board, dated November 26, 1980, which affirmed the State Workmen's Compensation Commissioner's ruling denying the claimant's application for dependent death benefits on

the ground that the commissioner did not have jurisdiction to consider the claim, and that the claim was untimely because it was not filed within two years of the death of claimant's decedent.

The facts of this case are not in dispute. Claimant's decedent, William H. Hubbard, was granted a total permanent disability award for silicosis on January 21, 1965. His last date of exposure to work conditions giving rise to the disease was March 27, 1964. Under the provisions of W.Va. Code §§ 23-4-6a and 23-4-10 [1961] then in effect, the dependent widow of an employee who died from occupational pneumoconiosis was entitled to death benefits, provided the employee died within six years of the date of his last exposure. This limitation period between the date of last exposure and the date of death was changed to ten years by the Legislature in 1967. *See* W.Va.Code § 23-4-10 [1967]. The limitation period was removed altogether by the Legislature in 1974. The disability need now only be continuous from date of last exposure to date of death. *See* W.Va.Code § 23-4-10 [1974].

Mr. Hubbard died March 18, 1971, approximately seven years after the date of his last exposure and approximately four years after the 1967 amendment to W.Va. Code § 23-4-10. The primary cause of death was listed on his death certificate as pneumoconiosis and lung failure. The claimant herein, Mr. Hubbard's widow, acting *pro se*, timely filed her application for dependent benefits on May 12, 1971. The commissioner, however, did not apply the law then in effect, but rather applied the 1961 version of W.Va.Code § 23-4-10, and rejected her application by order dated Jan-

uary 17, 1972, because her husband had not died within six years from his date of last exposure. Notice of the commissioner's decision was sent to the claimant by letter on the same date. No appeal was taken to this ruling by the claimant, who was not represented by counsel.

Approximately five years later, on or about March 22, 1977, the claimant filed a second application for death benefits. The commissioner denied the application by order dated April 1, 1977 on the ground that it was not filed within two years of the death of the claimant's husband.[1] The claimant protested this order, and at a hearing held January 11, 1979 moved that her 1971 application be made a part of the record, that the commissioner set aside his previous ruling, and that he enter an order granting her benefits. The commissioner denied the motion and affirmed his previous order of April 1, 1977 rejecting the claimant's application.

On appeal, the Workmen's Compensation Appeal Board found that the commissioner was without jurisdiction to consider the claimant's application for dependent benefits on the ground that the entire case had been previously considered and adjudicated. The appeal board therefore affirmed the commissioner's decision.

The claimant contends that the commissioner's 1972 ruling dismissing her application was outside his jurisdiction in that it was entered in defiance of the intent of the Legislature and deprived her of the dependent benefits to which she was entitled by the statutes then in existence. She further contends that the commissioner's 1979 ruling dismissing her second application was

---

**1.** It is unclear from the record whether the commissioner relied upon the provisions of W.Va.Code § 23-4-15 [1971] or § 23-4-16 [1971] when he denied the claimant's application. W.Va.Code § 23-4-15 provides the time limitations within which a claimant's initial application for benefits must be filed. It provides in pertinent part:

[I]n the case of death, the application shall be filed ... by the dependent of such employee within two years from and after such employee's death.

W.Va.Code § 23-4-16 specifies the circumstances under which the commissioner may

make a modification or change with respect to a former finding or order. It provides in pertinent part:

The power and jurisdiction of the commissioner over each case shall be continuing and he may from time to time, after due notice to the employer, make such modifications or changes with respect to former findings or orders as may be justified: Provided, that no further award may be made in fatal cases ... except within two years after the death of the employee ....

erroneous, arguing that this was the only forum available to assert her claim, and that although her previous claim was rejected and no appeal was taken, the matters contained therein should not be barred by any statute of limitations or by the doctrine of *res judicata*. Because we agree with the claimant's contentions we reverse the order of the appeal board.

## I.

### THE 1971 APPLICATION

The commissioner's order rejecting the claimant's initial application for benefits was clearly wrong. Under the statutes in existence at the time of her husband's death, the claimant was indisputably entitled to dependent death benefits. Her claim was rejected solely because the commissioner applied the 1961 version of W.Va.Code § 23–4–10 to her claim, rather than the amended statute in effect at the time of her husband's death. The commissioner's action was erroneous for two reasons. First, he failed to give the claimant the benefit of the 1967 amendment to W.Va.Code § 23–4–19, and second, he failed to recognize the independent nature of the widow's death claim when he applied the statute in effect on Mr. Hubbard's last date of exposure, rather than the statute in effect on the date of death, to the widow's claim.

In *Lester v. State Workmen's Compensation Commissioner,* 161 W.Va. 299, 242 S.E.2d 443 (1978), we were faced with a situation analagous to that in the case at bar. *Lester* involved the period of limitations contained in former W.Va.Code § 23–4–15 [1969]. At the time of the claimant's last exposure in *Lester,* § 23–4–15 required claims for occupational pneumoconiosis benefits to be filed within three years from the date of last exposure. Before this three year period had expired, the Legislature amended the statute to provide that a claim must be filed within three years from the time the employee's disease was made known to him by a physician or from when he reasonably should have known of his affliction. The claimant in *Lester* filed his application for benefits

within three years of being informed by a physician that he suffered from occupational pneumoconiosis, but not within three years of the date of last exposure. The commissioner applied the version of § 23–4–15 in effect at the time of the employee's last exposure, and rejected the application as not timely filed. This decision was affirmed by the appeal board.

■ On appeal to this Court we held that the time limitations contained in W.Va. Code § 23–4–15 are basically procedural and remedial in nature, and that therefore in light of the beneficent purposes of the Workmen's Compensation Act and the liberality rules as to its construction, the amendments to the statute enlarging the limitation period should apply to claims that had not yet expired under the previously existing period of limitation. Our holding in *Lester* was premised upon the long standing rule in this jurisdiction that "where a new statute deals with procedure only, prima facie, it applies to all actions— those which have accrued or are pending, and future actions." 161 W.Va. 303–304, 242 S.E.2d at 446, *citing, Consentina v. State Compensation Commissioner,* 127 W.Va. 67, 31 S.E.2d 499 (1944); *Proffitt v. State Compensation Commissioner,* 108 W.Va. 438, 151 S.E. 307 (1930); *Tackett v. Ott,* 108 W.Va. 402, 151 S.E. 310 (1930); *McShan v. Heaberlin,* 105 W.Va. 447, 143 S.E. 109 (1928).

■ It cannot seriously be argued that the period of limitations contained in W.Va. Code § 23–4–10 is any less procedural in nature than that contained in W.Va.Code § 23–4–15. Furthermore, the 1967 amendment of § 23–4–10 occurred at a time prior to the expiration of the six year period of limitations imposed on the claimant's application by the statute in effect at the time of Mr. Hubbard's last exposure. The Legislature intended the 1967 amendment to apply to claims which had not yet expired under the previously existing period of limitation. *Lester v. State Workmen's Compensation Commissioner, supra.* The case at bar then clearly presents a situation where the commissioner should have applied the 1967 amendment of W.Va.Code

**576**

§ 23–4–10 to the claimant's application for benefits.

 It is a long established rule of law in this jurisdiction that a dependent's claim for death benefits is separate and distinct from the claim of the injured employee. *Sizemore v. State Workmen's Compensation Commissioner*, 159 W.Va. 100, 219 S.E.2d 912 (1975); *Staubs v. Workmen's Compensation Commissioner*, 153 W.Va. 337, 168 S.E.2d 730 (1969); *Ashworth v. Workmen's Compensation Commissioner*, 150 W.Va. 537, 148 S.E.2d 364 (1966); *Jones v. State Compensation Commissioner*, 128 W.Va. 737, 38 S.E.2d 376 (1946); *Gibson v. State Compensation Commissioner*, 127 W.Va. 97, 31 S.E.2d 555 (1944). A necessary corollary to this rule is that a dependent's right to benefits do not come into full existence until the employee's death. *Gibson, supra;* 2 Larson, *Workmen's Compensation Law* 64.10 (7th ed. 1978). Accordingly, the workmen's compensation statutes in effect on the date of death of an injured employee control the death claims of the employee's dependents. *Sizemore v. State Workmen's Compensation Commissioner, supra.* The commissioner was therefore clearly wrong when he failed to apply the statute in effect on Mr. Hubbard's death to his widow's claim for death benefits.

A factor that arguably may have influenced the commissioner's application of the six year period of limitations contained in former W.Va.Code § 23–4–10 to the claimant's application for benefits, was the decision of this Court in *Maxwell v. State Compensation Director*, 150 W.Va. 123, 144 S.E.2d 493 (1965). *Maxwell* was one of a series of opinions by this Court that vacillated on the issue of whether the workmen's compensation statute in effect on the date of the employee's injury or the statute in force at the time of the employee's death governs dependents' claims for death benefits. The Court first determined in *Hardin v. Workmen's Compensation Appeal Board*, 118 W.Va. 198, 189 S.E. 670 (1937) and *Lester v. State Compensation Commissioner*, 123 W.Va. 516, 16 S.E.2d 920 (1941) that the date of injury was the con-

trolling date. However, once the independent status of a dependent's death claim was recognized, the Court took the position that the date of death was the crucial date. *Peak v. State Compensation Commissioner*, 141 W.Va. 453, 91 S.E.2d 625 (1956); *Webb v. State Compensation Commissioner*, 138 W.Va. 21, 76 S.E.2d 248 (1953). In 1965 *Maxwell* expressly overruled *Webb* and *Peak*, and returned to the view expressed in *Hardin* that the date of injury determined which statute applied. Thus at the time of the claimant's first application, *Maxwell* directed the commissioner to look to the statute in effect on the decedent's last day of exposure to determine her eligibility for death benefits.

*Maxwell*, however, has since been overruled by the decision of this Court in *Sizemore v. State Workmen's Compensation Commissioner, supra.* In *Sizemore* we found inconsistent the recognition in *Maxwell* of the separate and distinct nature of a dependent's rights and claims from those of the injured employee, and its holding that in spite of the separate nature of the dependent's claims, the statute in effect on the date of the employee's injury determined the validity of the dependent's claim. Furthermore we also recognized in *Sizemore* that this inconsistency was premised upon the misinterpretation of the scope of the decision in *Terry v. State Compensation Commissioner*, 147 W.Va. 529, 129 S.E.2d 529 (1963). Accordingly we overruled *Maxwell*, and reinstated the rule expressed in *Webb* and *Peak*.

We believe any reliance the commissioner placed upon the *Maxwell* decision in denying the claimant's 1971 application for dependent death benefits was misfounded for two reasons. First, *Maxwell* is an aberrational decision that is at best confusing, and at its worst nonsensical. As we noted in *Sizemore:*

[T]he *Maxwell* case ... appears to have created a hybrid rule which this Court believes to be inconsistent, incorrect and fraught with potentials for misapplication and confusion. This is indicated because, although holding in *Maxwell* that the date of injury to the employee is

determinative, this Court has also been committed to the premise that a dependent's rights and claims are unique and separate from those of an injured employee. (Citations omitted.) 159 W.Va. 103–104, 219 S.E.2d at 914.

Second, and more importantly, the decision in *Maxwell* did not in any manner affect the long-standing rule of this jurisdiction that where a new statute relates to procedure only it applies to all actions which have accrued or are pending, and future actions. *Lester v. State Workmen's Compensation Commissioner, supra* (1978), *Consentina v. State Compensation Commissioner, supra; Proffitt v. State Compensation Commissioner, supra; Tacket v. Ott, supra; McShan v. Heaberlen, supra.* The application by the commissioner of the statute in effect at the time of Mr. Hubbard's last exposure to the claim of his widow was therefore clearly wrong.

## II.

### THE 1977 APPLICATION

The employer does not here argue that the commissioner's order rejecting the claimant's initial application was correct. Rather it contends that the order, whether correct or not, is final, that the claimant did not protest its entry within the statutory period, and therefore that the doctrine of *res judicata* applies to bar the claimant's second application. The appeal board is in agreement with the employer's contentions. It affirmed the commissioner's order rejecting the claimant's 1977 application on the ground that the commissioner had no jurisdiction to consider the claim because the entire case was previously considered and ajudicated pursuant to the 1971 application.

We believe the doctrine of *res judicata* is misapplied to the facts of this case. We find that the commissioner did have jurisdiction to consider the claimant's second application, and therefore reverse the order of the appeal board.

The adjective law of workmen's compensation, like the substantive, takes its tone from the beneficent and remedial character of the legislation. Procedure is generally summary and informal, the whole idea be-

ing to get away from cumbersome procedures and legal technicalities in order to reach a right decision by the shortest and quickest possible route. On the other hand, there is a point beyond which the abolition of procedural rules cannot go, since these rules have an irreducible core of necessary function that cannot be dispensed with in any orderly investigation of the merits of a case. The question that constantly recurs in cases involving the procedural rules of workmen's compensation law is whether, in any particular case involving the loss of benefits for procedural reasons under an otherwise meritorious claim, the indispensability of the procedural purpose so served outweighs the thwarting of the protective functions of the act. 3 Larson, *supra* § 78.10.

The doctrine of *res judicata* is based on a recognized public policy to quiet litigation and on a desire that individuals should not be forced to litigate an issue more than once, *Marquerite Coal Co. v. Meadow River Lumber Co.,* 98 W.Va. 698, 127 S.E. 644 (1925), and generally a judgment rendered on the merits by a court of competent jurisdiction in a proceeding precludes subsequent litigation between the same parties of all matters adjudicated in the first proceeding and those which could have been decided there. *State v. See,* 145 W.Va. 322, 115 S.E.2d 144 (1960); *Gentry v. Farruggia,* 132 W.Va. 809, 53 S.E.2d 741 (1949); *Burner v. Hevener,* 34 W.Va. 774, 12 S.E. 861 (1891).

We recently dealt with the application of the doctrine of *res judicata* in the context of workmen's compensation proceedings in the case of *White v. State Workmen's Compensation Commissioner,* 164 W.Va. 284, 262 S.E.2d 752 (1980). In *White* we recognized that while the doctrine of *res judicata* is applicable to workmen's compensation cases, *citing Pnakovich v. Commissioner,* 163 W.Va. 583, 259 S.E.2d 127 (1979), that doctrine is not rigidly enforced where to do so would defeat the ends of justice. 259 S.E.2d at 757; *see also, Gentry v. Farruggia, supra.* We therefore held that in light of the scope and purpose of the Workmen's Compensation

Act and the quasi-judicial summary proceeding in which claims are decided, the doctrine of *res judicata* would not bar compensation applications where the only obvious reason for rejection of the original claim was that it was untimely filed. 161 W.Va. 291–292, 262 S.E.2d 757.

■ We believe these same considerations apply to the facts of this case. The claimant herein was indisputably qualified to receive dependent death benefits under the statutes in existence on the date of her husband's death. At the time of her 1971 application, the claimant submitted proof that her husband was afflicted with an occupational disease, that he died of the disease, and that she was his lawful wife. Moreover, her claim was timely filed, and was uncontested by her husband's employer. The sole reason she was denied the benefits to which she was entitled by law was the commissioner's failure to apply the correct procedural rule. Under these circumstances we cannot apply the doctrine of *res judicata* to bar the claimant's second application for benefits.

■ Moreover, because we find that the commissioner has jurisdiction to set aside his 1972 order rejecting the claimant's first application for benefits, the failure of the claimant to appeal the commissioner's erroneous 1972 decision does not preclude her second application. No protest or appeal was taken by the claimant to the commissioner's order rejecting her 1971 application for benefits, and thus the order is considered final. W.Va.Code § 23–5–1 (1981 Replacement Vol.). Ordinarily the commissioner has no power or jurisdiction to vacate, set aside or modify a final order, except in the instances provided by statute. *Dismond v. State Compensation Commissioner,* 148 W.Va. 26, 132 S.E.2d 743 (1963); *Burr v. State Compensation Commissioner.* 148 W.Va. 17, 132 S.E.2d 636 (1963); *Cottrell v. State Compensation Commissioner,* 145 W.Va. 336, 115 S.E.2d 153 (1960). However, there is an exception to this rule where the final order was procured through fraud or mistake. *Munday v. State Workmen's Compensation Commissioner,* 154 W.Va. 571, 177 S.E.2d 221 (1970); *Bales v. State Workmen's Com-*

*pensation Commissioner,* 154 W.Va. 245, 175 S.E.2d 182 (1970); *Dickerson v. State Workmen's Compensation Commissioner,* 154 W.Va. 7, 173 S.E.2d 388 (1970); *Burr v. State Compensation Commissioner, supra; State ex rel. Garnes v. Hanley,* 150 W.Va. 468, 147 S.E.2d 284 (1966); *Partlow v. Workmen's Compensation Commissioner,* 150 W.Va. 416, 146 S.E.2d 833 (1966); *Stewart v. State Compensation Director,* 150 W.Va. 103, 144 S.E.2d 327 (1965); *Collins v. State Compensation Commissioner,* 145 W.Va. 774, 117 S.E.2d 313 (1960).

Several of the cases cited in the preceding paragraph state as a general proposition that a "mistake" which would justify the commissioner in setting aside a final order must be something more than an "erroneous decision" of the commissioner. *See Munday v. State Workmen's Compensation Commissioner, supra; Dickerson v. State Workmen's Compensation Commissioner, supra; Stewart v. State Compensation Director, supra.* For example, in *Stewart* is the following statement:

[C]laimant contends that the words "erroneous" and "mistake" are synonymous. However it is the view of this Court that a "mistake" which would justify the setting aside of such an award be something more than an erroneous decision of the commissioner. 150 W.Va. at 108, 144 S.E.2d at 330.

In *Dickerson,* after quoting the above language from *Stewart,* the Court stated:

It may be that after entry of the ... order the commissioner changed his mind as to the law of the case. If so, then that is not the kind of "mistake" that would justify the setting aside of one order and the entry of another. 154 W.Va. at 15, 173 S.E.2d at 393.

And in *Munday* the court after discussing the *Stewart* decision held:

[T]he nonmedical finding in an order of the state compensation commissioner that the employment of claimant for the period September 2, 1968 to December 31, 1968, instead of his employment for the correct period September 8, 1958 to December 31, 1968, by his former em-

ployer, is a mistake within the exception to the rule [that the commissioner has no jurisdiction to set aside a final order made by him, except as provided by statute], and that the commissioner has jurisdiction to correct such mistake, even though no objection to such finding was filed within the time period permitted by statute.

It should be clearly understood, however, that this decision applies only to a clear mathematical mistake in a nonmedical finding in an order of the commissioner in the determination of the degree of exposure and the period of time of employment of a claimant for compensation benefits and does not apply to an erroneous decision of any question of law or fact. 151 W.Va. at 577, 177 S.E.2d at 225.

The origins of this rule can be traced to the decisions of this Court in *Cottrell v. State Compensation Commissioner, supra* and *Collins v. State Compensation Commissioner, supra,* both handed down in 1960. In *Cottrell* the claimant suffered an injury for which he was paid a twenty-five percent partial disability. More than a year later claimant suffered a second injury of the same nature. The physicians to whom the claimant was referred recommended that an award of ten percent permanent partial disability was justified by the second injury. The commissioner then entered an order granting claimant a thirty-five percent permanent partial disability award, "less any compensation heretofore paid." The self-insured employer did not object to the entry of the order, but after being directed by the commissioner to pay the thirty-five percent award, and after the expiration of thirty days from the entry of the order, objected to making the payment, contending that the intention of the order

was that the twenty-five percent disability award previously paid should be deducted from the thirty-five percent award. The commissioner reconsidered the matter and entered an order setting aside the previous thirty-five percent award and granting the claimant a ten percent permanent partial disability award. The appeal board affirmed the commissioner's order and the claimant appealed to this Court.

Upon review we held that the commissioner has no power or jurisdiction to vacate, set aside or modify a final order made by him, except in the instances specifically provided by statute. Since the case did not involve the power of the commissioner to reopen a claim, and since no other provision of the act gave the commissioner the power to vacate a final order, we held that the commissioner was without jurisdiction to set aside the thirty-five percent award. Justice Browning, concurring, expressed the view that the broad powers given the commissioner under the act are such that he is invested with the implied power to vacate an award procured through fraud or mistake. Thus he would have affirmed the commissioner's order setting aside the thirty-five percent award on the basis that the thirty-five percent award was the product of a mistake.

The "fraud or mistake" exception to the general rule that the commissioner has no jurisdiction to set aside, vacate or modify a final order except in the instances provided by statute, was adopted by the Court in *Collins v. State Compensation Commissioner, supra,* an opinion authored by Justice Browning. However, no explanation was given in *Collins* concerning the nature of the "mistake" encompassed by the exception.[2] Although the mistake exception

2. Although six cases were cited in support of the "fraud or mistake" exception adopted in *Collins,* only one of these cases expressly held that the commissioner has the implied power to vacate a final award procured through fraud or mistake. *Harris v. Diamond Construction Co.,* 184 Va. 711, 36 S.E.2d 573 (1946). (In *Harris* the court held that the unauthorized compromise of a claim by claimant's attorney would constitute such a mistake to justify the setting aside of the compromise agreement, even though application for review was not filed within the period

permitted by statute.) Three of the cases cited dealt with the power of the commissioner to grant a rehearing on the ground of newly discovered evidence. *Homan v. Belleville Lumber & Supply Co.,* 104 Ind.App. 96, 8 N.E.2d 127 (1937); *Butts v. Montague Brothers,* 208 N.C. 186, 179 S.E. 799 (1935); *In re Crawford,* 205 S.C. 72, 30 S.E.2d 841 (1944). Of the two West Virginia decisions cited, one held merely that the commissioner has the power to institute suit to recover an award, already paid, that was procured through fraud, *State Compensation*

was restated three years after *Collins* in *Burr v. Compensation Commissioner, supra,* an explanation of its application was not provided until 1965 in *Stewart v. Compensation Director, supra.* In *Stewart,* Justice Browning gave the following example:

> [I]f three doctors had stated that the claimant had a thirty percent permanent partial disability and a clerk in the office of the department had misread the thirty percent and made a notation of eighty percent instead and such an award was made, this Court is of the view that the commissioner would have authority, after a period of protest or appeal had passed, to rectify such mistake. 150 W.Va. at 108, 144 S.E.2d at 330.

No precedent was cited in support of such a limitation on the "mistake" exception. Rather the limitation was founded solely upon the desirability of according finality to claims which the commissioner had considered and adjudicated. As was stated in *Stewart:* "If the commissioner had this authority [to set aside a final order upon the reconsideration of the law or the evidence] there would never be an end to workmen's compensation litigation. The thirty day protest period and the thirty day appeal period to the board would become meaningless." 150 W.Va. at 108, 144 S.E.2d at 330. *See also Dickerson v. State Workmen's Compensation Commissioner, supra.*

However, the policy of according finality to orders of the commissioner must be balanced with the protective functions of the act, and although we agree with the proposition that according finality to orders of the Workmen's Compensation Commissioner is a desirable policy, the ultimate and

overriding purpose of workmen's compensation is to provide sustenance to the victims of work-connected injuries and their families, *see Cole v. State Workmen's Compensation Commissioner,* 166 W.Va. 294, 273 S.E.2d 586 (1980); 1 Larson, *supra* § 2.50, and to allocate the burden of cost of such sustenance, which is an inherent cost in the production of goods, to the most appropriate source of payment, the consumer of the goods. *See,* 1 Larson, *supra* at § 2.20. Moreover, it is the acknowledged policy of the West Virginia Workmen's Compensation Act "to prohibit the denial of just claims of injured or deceased workmen or their dependents on technicalities." W.Va.Code § 23–5–3a (1981 Replacement Vol.). To hold that the commissioner does not have jurisdiction to set aside an order which was based on the mistaken application of a procedural statute, and which denied a qualified claimant the benefits to which she was then entitled by law, would thus contravene the purpose and the spirit of the Workmen's Compensation Act.

■ Therefore while we agree that the commissioner has the implied power to vacate a final order procured through fraud or mistake, *see Colvin v. State Compensation Commissioner,* 154 W.Va. 280, 175 S.E.2d 186 (1970), we disapprove of the statement announced in *Stewart, supra,* that "a 'mistake' which would justify the setting aside of [a final order] must be something more than an erroneous decision of the commissioner." 150 W.Va. at 108, 144 S.E.2d at 330. Rather under the circumstances of this case we must agree with the claimant in *Stewart* that the words "erroneous" and "mistake" are synonymous.[3] Consequently we hold that the

---

*Commissioner v. Dale,* 118 W.Va. 303, 190 S.E. 338 (1937), and the other that an improper award granted to a claimant, who at the time of his injury was employed in interstate commerce within the meaning of the Federal Employers Liability Act, could not be the basis of a claim of *res judicata* in a subsequent negligence cause of action brought against the employers. *Pritt v. West Virginia Northern R. Co.,* 132 W.Va. 184, 51 S.E.2d 105 (1948).

**3.** Our conclusion is reinforced by the common and legal definitions attached to the terms. "Er-

ror" is derived from the Latin *erraturam,* as modified by the Old French *erreure.* It is defined by *The Oxford English Dictionary* (Clarendon Press, Oxford 1933), as "[s]omething incorrectly done through ignorance or inadvertence; a mistake, *e.g.* in calculation, judgment, speech, writing, action, etc." *Black's Law Dictionary* (5th ed. 1979) contains substantially the same definition. It defines "error" as "[a] mistaken judgment or incorrect belief as to the existence or effect of matters of fact, or a false or mistaken conception or application of the law."

mistaken application by the commissioner of the wrong procedural statute, which deprives an otherwise qualified claimant of the widow's benefits to which she is entitled under the statutes in effect on the date of her husband's death, is a mistake which justifies the setting aside of a final order. The commissioner therefore has jurisdiction to correct such mistake in a subsequent proceeding, even though no objection to the order was filed within the time period permitted by statute. To hold otherwise would contravene the spirit and purpose of the Workmen's Compensation Act, and permit the unjust enrichment, at the expense of this qualified claimant, of the consumers of the goods produced by her decedent, and of the company for which he performed the work that gave rise to his disability and death.

▆▆▆ Finally we find the commissioner's ruling rejecting the claimant's second application for benefits on the ground that it was not filed within two years of her husband's death to be erroneous. We believe that under the unique circumstances of this case, the claimant's first timely application for death benefits was sufficient to preserve her claim.

For the foregoing reasons the decision of the Workmen's Compensation Appeal Board which held that the commissioner was without jurisdiction to consider the claimant's application for benefits, and which affirmed the commissioner's order rejecting the claimant's application on the ground that it was not filed within two years of her husband's death, is reversed and the case is remanded for the entry of an order consistent with this opinion.

Reversed and remanded.

NEELY, Justice, concurring:

I concur to point out that this case applies only to a situation in which a timely claim was made initially and was improperly denied. It does not have the effect of opening up this entire area of the law for *new* applications for benefits under *W.Va. Code*, 23–4–10 [1978] merely because that statute is denominated "procedural." If the claim was barred under earlier statutes, it is still barred.

MILLER, Chief Justice, dissenting:

I must dissent from the majority's view as I believe they have erroneously construed W.Va.Code, 23–4–10, as providing some type of a time limitation for filing a claim for dependent death benefits. This perhaps results from a misreading of *Sizemore v. State Workmen's Compensation Commissioner*, 159 W.Va. 100, 219 S.E.2d 912 (1975), which discussed at some length the various statutory changes to W.Va. Code, 23–4–10. *Sizemore* dealt with an amendment to this statute which had extended the time period from six to ten years. The effect of the amendment was that if an injured employee died during the ten-year period from a cause attributable to his industrial accident, his dependent had the right to file a claim for dependent benefits. At issue in *Sizemore* was whether the dependent could obtain the benefit of the new ten-year amendment. *Sizemore* did not discuss whether the claim for dependent benefits was timely filed under W.Va.Code, 23–4–15, which is the issue in this case.

The original purpose of the time period contained in W.Va.Code, 23–4–10, was to operate as a bar against a dependent's right to even be entitled to a death benefit claim. In *Long Flame Coal Co. v. State Compensation Commissioner*, 111 W.Va. 409, 163 S.E. 16 (1932), the Court dealt with an earlier counterpart of W.Va.Code, 23–4–

---

"Mistake" is derived from the Old Norse or Icelandic *mistaka*, and Swedish *misstaga*. It is defined by *The Oxford English Dictionary, supra*, as "[a] misconception or misapprehension of the meaning of something; *hence* an error or fault in thought or action." *Black's Law Dictionary, supra*, contains a similar definition. It defines "mistake" as "[s]ome unintentional act, omission, or error arising from ignorance, surprise, imposition, or misplaced confidence."

Thus we recognize that while the words "error" and "mistake" have arisen from different etymological sources, they have substantially

10,[1] which contained a one-year provision, and concluded in Syllabus Point 1:

"Properly construed, the Workmen's Compensation Act of 1913 and the subsequent amendments thereto, deny payment of compensation to the dependents of a fatally injured employee who dies more than one year from the date of the injury as the proximate result of the injury received in the course of and resulting from his employment."

Much the same point was made in *Terry v. State Compensation Commissioner*, 147 W.Va. 529, 533, 129 S.E.2d 529, 532 (1963), where in speaking of W.Va.Code, 23–4–10, we said:

"It is clear that by that provision of that statute the Legislature created, as conditions precedent to the allowance of benefits to the widow or widower and children of the deceased employee, that the employee should have died from silicosis within six years from the date of the last injurious exposure to silicon dioxide dust in harmful quantities and that the commissioner has determined at the time of the original award that the employee was suffering from silicosis in the third stage. The satisfaction of each of these requirements is essential to the allowance of the claim of a dependent to the benefits provided by the statute."

To construe W.Va.Code, 23–4–10, as providing some type of time period in which to file a death benefit claim is to ignore its

history and the provisions of W.Va.Code, 23–4–15, which has historically been our statute covering the time period for filing claims.[2]

As *Flame Coal Co., supra,* and *Terry, supra,* state, the time periods formerly contained in W.Va.Code, 23–4–10, were designed to be preconditions that must be met in order to have the right to file for dependent benefits. If the employee did not die within the time period contained in W.Va.Code, 23–4–10, his dependents did not have any right to file for dependent benefits. It is true that W.Va.Code, 23–4–10 (1978), does not contain any time period from the date of his injury in which the claimant must die in order to give rise to a right for his dependent to claim death benefits.[3] In other words a claimant may die at any time and if it is shown that the industrial injury caused his death and that his disability was continuous from the date of such injury until the date of death, his dependents can file for benefits. However, the *time* for filing for such benefits is still controlled by W.Va.Code, 23–4–15 (1973).

The answer to the present claim is that even if we ignore the claimant's first filing some two months after her husband's death in March of 1971 as creating a *res judicata* problem, the second filing in March of 1977 was well beyond the time period for filing a claim under W.Va.Code, 23–4–15 (1973). This statute provides that

---

identical meanings and thus are considered synonymous terms.

**1.** The pertinent portion of W.Va.Code, 23–4–10 (1931), was:

"In case the personal injury causes death within the period of one year from the date of the original injury, and the disability is continuous from date of such injury until date of death, the benefits shall be in the amounts, and to the persons, as follows: ..."

**2.** The pertinent portion of W.Va.Code, 23–4–15 (1973), which is presently in effect, is:

"To entitle any employee to compensation for occupational pneumoconiosis under the provisions hereof, the application therefor must be made on the form or forms prescribed by the commissioner and filed in the office of the commissioner within three years from and after the last day of the last continuous period of sixty days or more during which

the employee was exposed to the hazards of occupational pneumoconiosis or within three years from and after the employee's occupational penumoconiosis was made known to him by a physician or which he should reasonably have known, whichever shall last occur, or, in the case of death, *the application shall be filed as aforesaid by the dependent of such employee within two years from and after such employee's death."* (Emphasis added)

**3.** W.Va.Code, 23–4–10 (1978), provides, in part:

"In case a personal injury, other than occupational pneumoconiosis or other occupational disease, suffered by an employee in the course of and resulting from his employment, causes death, and disability is continuous from date of such injury until date of death, or if death results from occupational pneumoconiosis or from any other occupational disease, the benefits shall be in the amounts and to the persons as follows: ..."

"the application shall be filed as aforesaid by the dependent of such employee within two years from and after such employee's death." Consequently, I would hold that the Appeal Board was correct in concluding that the claim was time barred.